STATE of Wisconsin, Plaintiff-Respondent,

v.

Timothy B. PANKNIN, Defendant-Appellant.†

Court of Appeals

*No. 97–1498–CR. Submitted on briefs January 26, 1998.——Decided February 25, 1998.*

(Also reported in 579 N.W.2d 52.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Daniel R. Clausz* of *Robinson, Peterson, Berk & Cross* of Appleton.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general and *William C. Wolford,* assistant attorney general.

Before Brown, Nettesheim and Anderson, JJ.

ANDERSON, J. Timothy B. Panknin is pursuing access to the notes prepared by the trial court for sentencing and sealed in the court record. He argues that the trial court should be compelled to make the notes available so that he can determine if the court relied on inaccurate information or other improper factors in handing down its sentence. We affirm the judgment and the court's order denying Panknin access because we conclude that irreversible harm would be done to the judicial process by opening the private notes of the court to litigants.

The court sentenced Panknin to fifteen years in prison after he entered a no contest plea to being a party to the crime of armed robbery by use or threat of use of a dangerous weapon, as a repeater. *See* §§ 943.32(1)(b) & (2), 939.05, and 939.62(1)(c), STATS.[1] Panknin elected to seek postconviction relief, and counsel, in reviewing the court record, found on the minutes sheet of the sentencing hearing the notation, "Judge's notes sealed." Counsel immediately wrote the court and requested "access to those notes as I determine whether there are any appealable issues in this case." The court denied counsel's request in a handwritten note in the margin of the letter, "Request denied. Judge's notes are confidential."

Counsel wrote the court a second time:

---

[1] Panknin originally was also charged with one count of false imprisonment while armed with a dangerous weapon in violation of §§ 940.30 and 939.63(1)(a)4, STATS., and one count of possession of cocaine in violation of § 161.41(3m), STATS., 1993–94. The State alleged that Panknin was a habitual criminal and he faced up to sixty-four years in prison. As part of a plea agreement, these two counts were dismissed and read in.

If you are aware of any statute or case law which allows you to seal your notes, I would appreciate it if you could inform me of it so that I can determine if I should pursue an appeal on this matter.

Obviously, I have no idea of what information you have in your notes. However, the defendant has a due process right to be sentenced according to true and accurate information. I know you conduct a very thorough background check on the defendants you are about to sentence. I believe my client has a right to know if the information you obtained during your research is correct or not. That is why I believe it is important for the defense to have access to the information you obtained during your research.

In that same letter, counsel asked the court to consider his request at the same time as the hearing on Panknin's motion for a modification of his sentence. At the motion hearing, the court stated that as a matter of principle he would not grant Panknin access to his notes. The court commented that the notes he makes are helpful to refresh his memory when he has to rehear matters or consider motions many months after an event. He keeps the notes sealed in the court record because it would not be practicable to keep them in a separate file.[2] The court said, "[W]hen the court jots down notes and so on it would have to be looking over

[2] A judge's personal notes should not be placed in the clerk of court's file. It is too easy for a clerk to become distracted and forget to seal the notes; or, there is nothing preventing a person reviewing the file from opening sealed notes. A better practice is to keep a personal filing cabinet for notes in chambers. A court can use file folders labeled with the case number or keep notes on the computer's hard drive using the case number for the file name. The confidential nature of the notes is ensured if the court keeps them in chambers and out of the public court file.

his shoulder at who might look at them. And that's exactly contrary to what should be done." The court also refused to include his sealed notes in the appellate record.[3]

On appeal, Panknin makes an argument of "perhaps." Taking off from the proposition that a defendant has the right to be sentenced on the basis of true and correct information, Panknin embarks on a flight of speculation. His argument is conjecture: perhaps the judge came across inaccurate information when doing independent research before sentencing; perhaps the judge failed to disclose communications from interested parties; or, perhaps the notes will show the judge considered facts not of record.[4] Panknin's counsel seeks the right to review the court's personal notes in order to evaluate potential appellate issues; he seeks to independently determine if the court considered inaccurate information or improper arguments.

Panknin's bid for access to the personal notes of the trial judge is a question of first impression. Before we discuss his proposition, we have to settle upon the standard of review that will guide our discussion. The issue requires us to consider whether the personal

[3] We declined to order the trial court to include the sealed notes in the appellate record. Rather, we ordered Panknin to brief the issue of whether the trial court erred in not granting him access to the sealed notes.

[4] Panknin does not describe what constitutes the "thorough background check" the trial court performs on defendants awaiting sentencing. The record is also silent. We are left to guess whether the appellant is arguing that the trial judge relies upon the presentence investigation report prepared by a trained probation agent or conducts a personal investigation to supplement that report.

notes of a trial judge are available for scrutiny by litigants. To perform this role, we are not concerned with disputed facts. We are addressing a question of law because the resolution of the issue will regulate access to the personal notes of a trial judge. *See generally* Ronald R. Hofer, *Standards of Review—Looking Beyond the Labels,* 74 MARQ. L. REV. 231, 236 (1991). We traditionally accord no deference to the trial court on questions of law because there is nothing intrinsic to their determination which gives the trial court any advantage over an appellate court. *See State v. Pepin,* 110 Wis. 2d 431, 436, 328 N.W.2d 898, 900 (Ct. App. 1982). Another reason we will review this issue de novo is that we are in a better position to dispassionately consider whether a litigant and the general public can have access to a trial judge's personal notes.

As we have already noted, this is a question of first impression. We find guidance in three areas. First, case law furnishes us with guidance on the limits of appellate review of the exercise of sentencing discretion by the trial court. Second, Wisconsin's open records law is instructive on access to personal notes, memos and documents created by public employees subject to the provisions of the law. The nature of the judicial decision-making process provides the final part of the answer.

We agree with Panknin that fundamental principles of fairness and due process require that the trial court base the sentencing decision on legitimate considerations. *See State v. J.E.B.,* 161 Wis. 2d 655, 666, 469 N.W.2d 192, 197 (Ct. App. 1991). However, "the due process right of the defendant to be sentenced on the basis of true and correct information is protected when the sentencing court appropriately exercises its

discretion." *State v. Perez*, 170 Wis. 2d 130, 142, 487 N.W.2d 630, 634 (Ct. App. 1992). An erroneous exercise of sentencing discretion

> might be found under the following circumstances: (1) Failure to state on the record the relevant and material factors which influenced the court's decision; (2) reliance upon factors which are totally irrelevant or immaterial to the type of decision to be made; and (3) too much weight given to one factor on the face of other contravening considerations.

*Ocanas v. State*, 70 Wis. 2d 179, 187, 233 N.W.2d 457, 462 (1975). To facilitate appellate review, the trial court is required to articulate the basis for the sentence imposed on the facts of record. Appellate review searches for evidence in the record that discretion was in fact exercised. *See State v. Echols*, 175 Wis. 2d 653, 682, 499 N.W.2d 631, 640 (1993).

Public policy affords a strong presumption of reasonableness to the exercise of a court's sentencing discretion. *See id.* at 681–82, 499 N.W.2d at 640. It is the defendant's burden to show some unreasonable or unjustifiable basis in the record for the sentence imposed. *See id.* at 682, 499 N.W.2d at 640. In attempting to meet this burden, the defendant cannot seek to mount a fishing expedition through the court's personal notes. Rather, the defendant is limited to searching the official record for evidence that the trial court erroneously exercised its discretion.

Panknin's argument that the personal notes of the court might reveal reliance on information not in the record carelessly disregards his burden and the basic requirement that " 'there should be evidence in the record that discretion was in fact exercised and the

basis of that exercise of discretion should be set forth.' " *McCleary v. State*, 49 Wis. 2d 263, 277, 182 N.W.2d 512, 519 (1971) (quoted source omitted). As the Wisconsin Supreme Court explained, a record of the court's reasoning process is required because:

> In all Anglo-American jurisprudence a principal obligation of the judge is to explain the reasons for his actions. His decisions will not be understood by the people and cannot be reviewed by the appellate courts unless the reasons for decisions can be examined. It is thus apparent that requisite to a prima facie valid sentence is a statement by the trial judge detailing his reasons for selecting the particular sentence imposed.

*Id.* at 280–81, 182 N.W.2d at 521.

A defendant—or for that matter, any litigant—cannot be permitted to ransack and pillage through a court's personal notes. The appeal of a sentence is limited to the record. The court's thoughts, personally recorded before, during or after the sentencing, are not evidence of the exercise of discretion. To grant Panknin access to the court's personal notes would have negative consequences. First, we would be retarding the proper exercise of discretion because courts would be actively discouraged from giving advance thought to the awesome responsibility of sentencing out of concern that their initial thoughts would become available to the defendant after sentencing. The "proper exercise of discretion contemplates that a court will give advance thought to the particular crime, the criminal and the community." *State v. Varnell*, 153 Wis. 2d 334, 338, 450 N.W.2d 524, 526 (Ct. App. 1989). Second, granting Panknin's request would encourage judges to become inflexible because to

depart from their recorded advance thoughts concerning sentencing would be to invite postconviction attack on the sentence imposed. In *Varnell,* we noted, with approval, that the trial judge acknowledged that he frequently deviated from his advance thoughts after hearing the presentations of the attorneys and the defendant at the sentencing hearing. *See id.* at 339, 450 N.W.2d at 526.

We can look to Wisconsin's open records law for additional authority barring access to a court's personal notes. Section 19.32(2), STATS., defines "record":

> "Record" means any material on which written, drawn, printed, spoken, visual or electromagnetic information is recorded or preserved, regardless of physical form or characteristics, which has been created or is being kept by an authority. "Record" includes, but is not limited to, handwritten, typed or printed pages, maps, charts, photographs, films, recordings, tapes (including computer tapes), computer printouts and optical disks. *"Record" does not include drafts, notes, preliminary computations and like materials prepared for the originator's personal use*. [Emphasis added.]

There are no reported Wisconsin cases deciding what constitutes "notes . . . prepared for the originator's personal use." *See id.*

Ohio has addressed requests under its open records law to review a court's personal notes on several occasions. In *State ex rel. Steffen v. Kraft*, 619 N.E.2d 688 (Ohio 1993), a defendant sentenced to the death penalty petitioned for a writ of mandamus seeking to review the notes the judge made during trial. Although Ohio's statute, OHIO REV. CODE ANN. § 149.43(A)(1) (Banks-Baldwin 1997), broadly defines a "public record" as a "record that is kept by any public

office," the Ohio Supreme Court easily concluded that it did not include the personal notes of a judge. The Ohio Supreme Court held that "such notes are simply personal papers kept for the judge's own convenience and not official records." *Steffen*, 619 N.E.2d at 689; *see also State ex rel. Mothers Against Drunk Drivers v. Gosser*, 485 N.E.2d 706, 709 n.2 (Ohio 1985) (judges' personal notes of drunk driving trials and hearings are not public record); and *State ex rel. Martinelli v. Corrigan*, 593 N.E.2d 364, 366 (Ohio Ct. App. 1991) (defendant convicted of murder denied access to judge's personal notes made during trial).[5]

Several other courts have held that the personal notes of public officials are not subject to disclosure under the open records law or freedom of information act. In *Sibille v. Federal Reserve Bank*, 770 F. Supp. 134 (S.D.N.Y. 1991), the court denied access to handwritten notes of meetings and telephone conversations taken by two employees of a federal reserve bank. The court concluded that the notes were taken on the employee's own initiative, to enhance his or her own recollection. *See id.* at 138. In *American Federation of Government Employees, Local 2782 v. United States Department of Commerce*, 632 F. Supp. 1272 (D.D.C. 1986), *aff'd*, 907 F.2d 203 (D.C. Cir. 1990), the court denied a government employee union's request for records kept by an employee of the Census Bureau. The

---

[5] Although not arising under an open records law or freedom of information act, Texas considered a case where the personal notes of the trial judge were discovered in the court's file by the appellant's attorney who was making copies of the docket sheet. *See Peery v. Peery*, 709 S.W.2d 392, 395 (Tex. Ct. App. 1986). The appellate court held that the trial court did not err in refusing to admit into evidence its handwritten notes made during a divorce hearing. *See id.*

court concluded "that the logs, although undoubtedly work-related, were nevertheless a voluntary piece of unofficial scholarship of an employee who wished only to facilitate her own performance of her duties . . . ." *Id.* at 1277.

In *Izaak Walton League of America, Inc. v. United States Atomic Energy Commission*, 380 F. Supp. 630 (N.D. Ind. 1974), the federal district court considered whether the Atomic Energy Commission must produce agency records, including handwritten notes of health and safety reviews, in connection with licensing proceedings involving application for permit for construction of a nuclear plant. The court denied access to the handwritten notes stating: "Disclosure of such personal documents would invade the privacy of and impede the working habits of individual staff members; it would preclude employees from ever committing any thoughts to writing which the author is unprepared, for whatever reason, to disseminate publicly." *Id.* at 633.

█

From these cases it becomes clear that even though the personal notes of a court are work related, they are nevertheless a voluntary piece of work completed by the trial court for its own convenience and to facilitate the performance of its duties. The personal notes would not have to be disclosed under Wisconsin open records law because disclosure would impede the work habits of the trial court. The fear that the thoughts of the court would be public would preclude judges from ever committing any thoughts to writing. Maintaining the confidential nature of the trial court's personal notes does not contravene the public policy of Wisconsin's open records law that "all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those

officers and employes who represent them." Section 19.31, STATS. The court record and the verbatim transcript of all court proceedings are the most accurate sources of information on the operation of the trial court and the court's performance of its official duties and acts.

The very nature of the decisional process demonstrates why a litigant cannot have access to the personal notes of a trial court. In *Steffen*, 619 N.E.2d at 689, the Ohio Supreme Court explained:

> [P]ermitting a litigant access to a judge's personal trial notes would intrude upon a judge's subjective thoughts and deliberations, threatening the orderly administration of justice. If the notes were available, counsel could presumably ask the court to explain the notes, such as why the court recorded some events and not others, or why the trial court characterized certain events in a certain manner. By comparison, courts do not permit counsel to inquire of jurors as to their deliberations.[6]

The California Court of Appeals has spoken at length about the judicial decisional process and the havoc that would be caused by providing access to the

[6] Likewise in Wisconsin, "no juror is competent to testify regarding the mental processes of the jurors during jury deliberation." *Anderson v. Burnett County*, 207 Wis. 2d 587, 593, 558 N.W.2d 636, 640 (Ct. App. 1996); *see also* § 906.06(2), STATS. One reason for this rule is to prevent harassment of jurors by a losing party seeking to set aside the verdict. *See Anderson*, 207 Wis. 2d at 593, 558 N.W.2d at 640. Barring litigants from the personal notes of the trial court will prevent collateral attacks on the decisional process employed by the trial court and will guarantee that appeals will be limited to questions concerning the sufficiency of the evidence, the correct application of the law or the proper exercise of discretion.

personal notes and drafts of the judges. In *Copley Press, Inc. v. Superior Court*, 7 Cal. Rptr. 2d 841 (Cal. Ct. App. 1992), a newspaper sought to randomly review the minute books of the clerks serving six specific superior court judges in San Diego County. The presiding judge of the superior court held that the minute books were not official court records and were not open to public view; the newspaper appealed. *See id.* at 842. The California Court of Appeals divided the documents prepared by a court into two groups. *See id.* at 845. Category I included "documentation which accurately and officially reflects the work of the court" and in which the public has a justifiable interest. *Id.* Category II was described as follows:

> [M]uch written material is created inside the courthouse that does not fit the profile of this group of documents [Category I]. The craft of the lawyer, judge and clerk involves important but elusive concepts, such as logic, justice, equity and the rule of law; however, the physical manifestation of these ideas is the written word. Courts may not produce much heat or light, and in fact not very much of a tangible nature at all, but they produce prodigious quantities of words. The end product of all this effort is hopefully accurate, well conceived and generally beneficial. In order to reach that end result, however, [many] defective words need[ ] to be produced.

*Id.* The court concluded that whether at the trial court or the court of appeals, there is a great deal of material that is created during the judicial workday for the purpose of carrying out judicial duties that should not be subject to public scrutiny. *See id.* at 846.

The very nature of preliminary drafts, personal notes and rough records is such as to argue against their inspection by third parties. Such inspection and possible use would in many cases be detrimental to the user, since the materials in Category II are tentative, often wrong, sometimes misleading. It is for this very reason that these materials are not regarded as official court records—they do not speak for the court and do not constitute court action. Perhaps more importantly, a requirement that these Category II materials be made available for public view would severely hamper the users of the materials. The reason for preparation of a first draft is to extract raw and immature thoughts from the brain to paper, so that they can be refined and corrected. The judge's personal bench notes are constructed so as to remind him [or her], in his [or her] personal fashion and not in a form digestible by the public, of the aspects of the case he [or she] thought important. Much more harm would be done to the judicial process by requiring this Category II material to be available to the public, than would ever be overborne by any benefit the public might derive thereby.

*Id.*

We are in complete agreement with the California Court of Appeals. It has been our experience, as trial judges and appellate judges, that reaching the final result requires the production of thousands of words and many drafts. Members of this panel who have been trial judges took copious bench notes, including summaries of the evidence and cryptic conclusions on the credibility of witnesses, weight of the evidence and persuasiveness of legal argument. In preparation for trial court proceedings, including sentencing, screening conferences and oral arguments, we researched the issues

and made notes of our tentative conclusions. We each did this in our personal fashion for our personal convenience.

We are confident that all of the judges and justices in this state engage in a similar decisional process. The notes of judges, whether cryptic or formal, do not represent their final ruling or decision; that is only represented in oral decisions rendered from the bench, memorandum decisions, written orders or judgments or opinions from the court of appeals and the supreme court. In many cases it takes a great deal of work to reach a final ruling or decision: the back roads traveled, the dead ends encountered should not be accessible to a litigant. It is only the final reasoning process which judges are required to place on the record that is representative of the performance of judicial duties. We conclude that access to a court's notes would significantly disrupt the judicial decisional process.

*By the Court.*—Judgment and order affirmed.