The VOICE OF WISCONSIN RAPIDS, LLC and
Jeff Williams, Plaintiffs-Appellants, †

v.

WISCONSIN RAPIDS PUBLIC SCHOOL DISTRICT and
Colleen Dickmann, Defendants-Respondents.

Court of Appeals

*No. 2014AP1256. Oral argument April 15, 2015.
—Decided June 4, 2015.*

2015 WI App 53

(Also reported in 867 N.W.2d 825.)

† Petition for Review denied 10/8/15.

430

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *April Rockstead Barker* of *Schott, Bublitz & Engel, S.C.*, Brookfield. There was oral argument by *April Rockstead Barker*.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Andrew A. Jones* and

*Kurt M. Simatic* of *Whyte Hirschboeck Dudek S.C.*, Milwaukee. There was oral argument by *Andrew A. Jones*.

Before Blanchard, P.J., Sherman, and Kloppenburg, JJ.

¶ 1. BLANCHARD, P.J. In this public records case, The Voice of Wisconsin Rapids, LLC, and Jeff Williams (the newspaper) appeal the circuit court's denial of the newspaper's petition for a writ of mandamus to compel the Wisconsin Rapids Public School District and its superintendent (the district) to grant the newspaper access to documents withheld by the district. These documents were created by district employees in connection with interviews that the employees conducted as part of a district investigation. After inspecting the withheld documents, the circuit court denied the newspaper's petition on the grounds that, under WIS. STAT. § 19.32(2) (2013–14),[1] the documents are not "record[s]" subject to disclosure, because the documents are "notes" "prepared for the originator[s'] personal use." Based on the language of § 19.32(2), an opinion of Wisconsin's attorney general containing interpretations of § 19.32(2) to which the legislature has apparently acquiesced, and *State v. Panknin*, 217 Wis. 2d 200, 579 N.W.2d 52 (Ct. App. 1998), we conclude that the circuit court's analysis is correct and accordingly affirm.

---

[1] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

## BACKGROUND

¶ 2. The newspaper filed a petition against the district under the public records law.[2] The newspaper sought access to all district records involving a district investigation into allegations of impropriety surrounding a school athletic program. Particulars regarding the allegations of impropriety in the athletic program and regarding the district's formal positions or actions arising from the investigation do not matter to any issue raised in this appeal. The essentials that matter are that there was a district investigation, which involved interviews conducted by district employees, and the employees created documents regarding the interviews, at least some of which the employees retained.

¶ 3. The district withheld requested documents on various grounds. However, the only ground offered by the district pertinent to this appeal is that some of the requested documents did not qualify as "records" under Wis. Stat. § 19.32(2) because they are the type of "notes" that are excluded from the definition of "record."

¶ 4. The newspaper conducted discovery into the manner in which district employees had conducted their investigation, although naturally the newspaper was without the benefit of being able to inspect the withheld documents. In depositions, district employees testified as to why they took notes, how they planned to

---

[2] Subchapter II of Chapter 19 of the Wisconsin Statutes is entitled "PUBLIC RECORDS AND PROPERTY." Our supreme court has sometimes referred to Wis. Stat. §§ 19.31–19.39 as the public records law and other times as the open records law. We follow the former usage, in part to avoid confusion with Wisconsin's open meetings law.

use the notes, and how they actually used them. We refer to aspects of this evidence as called for in the Discussion section below.

¶ 5. The newspaper requested a writ, or, in the alternative at least as a preliminary step, an in camera review of the withheld documents, with both the court and counsel for the newspaper reviewing the documents. The newspaper supported its pleadings with affidavits and attached supporting materials. The newspaper argued in part that, "to the extent investigative documents were transcribed as handwritten 'notes,' they are not the kind of 'personal notes' that could be excluded from the definition of 'public records.' " The district filed a brief in opposition, along with affidavits and attached supporting materials. As pertinent here, the district argued that the withheld documents were notes created for the personal use of district employees, which "were never exchanged, shared with anyone, or otherwise available to anyone [other than] the person drafting the notes," and therefore were not "records" under Wis. Stat. § 19.32(2).

¶ 6. The circuit court rejected the district's position that there was no need for the court to inspect the withheld documents. At the same time, the court proposed, and the newspaper did not object, that only the court inspect the documents in camera, without allowing counsel for the newspaper to also inspect them.

¶ 7. After an in camera inspection, the court explained that it had "no doubt" that the documents are "personal notes that were made for the originator[s'] personal use," as defined in Wis. Stat. § 19.32(2). This decision was based in part on the court's observations that the documents included doodles and comments reflecting apparent frustration on the part of

435

the note originators with aspects of the investigation, which were among the indicators that the documents were made solely for the personal use of the originators. In addition, the court concluded that the contents of the documents primarily reflected "highlights recorded for the originator's own personal use," including reminding the originators what each interviewee had said and listing tasks for the originators to pursue in conducting the investigation. On this basis, the court issued an order denying the newspaper's petition for a writ, which the newspaper now appeals.

## DISCUSSION

■■

¶ 8. When a circuit court grants or denies a petition for writ of mandamus by interpreting the public records law and applying that interpretation to undisputed facts, we review the court's decision de novo. *Hempel v. City of Baraboo,* 2005 WI 120, ¶ 21, 284 Wis. 2d 162, 699 N.W.2d 551. However, the parties disagree about the proper standard of review for us to use here, given that the circuit court made a determination that the documents at issue appear to be notes created for the personal use of the originators, a determination that the court implicitly made in light of deposition testimony from witnesses about why and how the documents were created and used. Because we would uphold the circuit court's decision under any standard of review, we assume without deciding that the newspaper is correct on this issue, and apply a de novo standard of review.

■■■■

¶ 9. We are called on to interpret Wis. Stat. § 19.32(2). Statutory interpretation generally proceeds as follows:

> When interpreting a statute, we begin with the language of the statute. We give words their common and ordinary meaning unless those words are technical or specifically defined . . . .
>
> We do not read the text of a statute in isolation, but look at the overall context in which it is used. When looking at the context, we read the text "as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." Thus, the scope, context, and purpose of a statute are relevant to a plain-meaning interpretation "as long as the scope, context, and purpose are ascertainable from the text and structure of the statute itself." If the language is clear and unambiguous, we apply the plain words of the statute and ordinarily proceed no further.

*Bank Mut. v. S.J. Boyer Constr., Inc.*, 2010 WI 74, ¶¶ 23–24, 326 Wis. 2d 521, 785 N.W.2d 462 (quoted sources omitted).

¶ 10.  "[T]he general presumption of our law is that public records shall be open to the public unless there is a clear statutory exception, unless there exists a limitation under the common law, or unless there is an overriding public interest in keeping the public record confidential." *Hathaway v. Joint Sch. Dist. No. 1,* 116 Wis. 2d 388, 397, 342 N.W.2d 682 (1984); *see also* Wis. Stat. § 19.35(1)(a) (Authorities must make their "records" available "[e]xcept as otherwise provided by law.").[3] At issue here is what the district argues is a

---

[3] Because the circuit court here concluded that a clear statutory exception applies, the court did not need to reach the second step used to address a petition based on the public records law, which requires balancing the presumption of openness against any countervailing public policies. *See Fox v.*

clear statutory exception within WIS. STAT. § 19.32(2). "Any exceptions to the general rule of disclosure must be narrowly construed." *Fox v. Bock*, 149 Wis. 2d 403, 411, 438 N.W.2d 589 (1989) (citing *Hathaway*, 116 Wis. 2d at 397).

■■

¶ 11. Because there is a pertinent Wisconsin attorney general opinion on the issue presented, discussed below, we note that we are to consider opinions of the attorney general on public records issues for their potential persuasive authority, as our supreme court has explained:

> Opinions of the attorney general are not binding as precedent, but they may be persuasive as to the meaning of statutes. The legislature has expressly charged the state attorney general with interpreting the open meetings and public records statutes, and provided that "[a]ny person may request advice from the attorney general as to the applicability" of the laws. WIS. STAT. §§ 19.98 and 19.39. Thus the interpretation advanced by the attorney general is of particular importance here.

*State v. Beaver Dam Area Dev. Corp.*, 2008 WI 90, ¶ 37, 312 Wis. 2d 84, 752 N.W.2d 295; *see also id.*, ¶ 44 (explicitly citing an attorney general opinion as a basis for the court's interpretation of the public records law) (citations omitted). Given this legislative delegation and the prominence of attorney general opinions in this area, apparent legislative acquiescence to attorney general public records opinions can be significant.

*Bock*, 149 Wis. 2d 403, 410, 438 N.W.2d 589 (1989) (court determination that document sought by requester is not a "record" can be a dispositive "threshold" issue supporting denial of petition for writ).

*See Schill v. Wisconsin Rapids Sch . Dist .*, 2010 WI 86, ¶¶ 21, 49, 92, 94, 99–118, 121–26, 139, 327 Wis. 2d 572, 786 N.W.2d 177.

¶ 12.   Turning to the particular statutory provision at issue, the following is the public records law definition of "record," omitting words and phrases not pertinent here, with emphasis on the primary exception at issue:

> "Record" means any material on which written, drawn, [or] printed[] . . . information . . . is recorded or preserved, . . ., which has been created or is being kept by an authority. "Record" includes, but is not limited to, handwritten, typed or printed pages, . . . . *"Record" does not include drafts, notes, preliminary computations and like materials prepared for the originator's personal use . . .;* materials which are purely the personal property of the custodian and have no relation to his or her office; . . . .

WIS. STAT. § 19.32(2).

¶ 13.   The district does not dispute that the withheld documents are "material[s] on which . . . information . . . is recorded . . . which has been created [and] is being kept by" the district. Separately, the parties do not discuss whether the documents at issue are "drafts," "preliminary computations," or "like materials," as opposed to "notes," and we take no position on that question. This leaves the question whether the withheld documents are "notes" that were "prepared for the originator's personal use." The quoted terms are not defined in the public records law.

¶ 14.   We begin by addressing "notes." The newspaper equivocates, but in the end does not argue that the documents are not "notes" under WIS. STAT.

439

§ 19.32(2). In any case, we conclude that the documents are "notes" for the following reasons.

¶ 15. Standard references confirm what seems obvious to us regarding the ordinary meaning of this common word. "Notes" covers a broad range of frequently created, informal writings. *See* THE OXFORD COMPANION TO THE ENGLISH LANGUAGE 709 (1992) ("a more or less informal memorandum or record, in greater or less detail, for any purpose"); WEBSTER's II NEW COLLEGE DICTIONARY 748 (1995) ("A brief record, esp[ecially] one written down to aid the memory"); MERRIAM WEBSTER, http://www.merriam-webster.com/dictionary/notes (last visited June 1, 2015) ("an informal written record of things that are said and done: a short piece of writing that gives you information: a brief comment or explanation"). The parties do not direct our attention to additional terms in the public records law or in closely related statutes that might assign to "notes" a more limited meaning than the very broad one contained in these definitions.

¶ 16. We have inspected the sealed record containing the documents and we cannot think of a more suitable word to describe how these documents consistently appear than "notes," for the same reasons given by the circuit court. They are mostly handwritten and at times barely legible. They include copies of post-it notes and telephone message slips, and in other ways appear to reflect hurried, fragmentary, and informal writing. In addition, witness testimony included in the discovery materials available to the circuit court consistently describes creation of these documents as a note-taking process. A few documents are in the form of draft letters. However, based on the witness testimony, we construe these to have been in the nature of notes, which were created for and used by the origina-

tors as part of their preparation for, or as part of their processing after, interviews that they conducted. Therefore, we conclude that all of the withheld documents are "notes" as that word is used in WIS. STAT. § 19.32(2).

¶ 17. For the balance of this opinion we address the phrase, "prepared for the originator's personal use," which is the focus of the parties' arguments. We will call this the personal use exception. We begin by explaining and rejecting a broad argument that the newspaper makes, and then turn to and also reject narrower arguments that the newspaper also makes.

¶ 18. The broad proposition advanced by the newspaper is that notes which might otherwise qualify as records under WIS. STAT. § 19.32(2) cannot be subject to the personal use exception if their content "has relevance to a government function," by which the newspaper means the exception does not apply if the notes are created or used in connection with "government work and a governmental purpose." In the newspaper's view, any notes that an employee of an authority (as "authority" is defined in § 19.32(1)) creates in connection with or relating to a function of an authority could not be subject to the personal use exception, no matter how closely the originator held the notes, used them, or planned to use them.[4] The documents at

---

[4] At times during oral argument, the newspaper retreated from this broad position in an apparent attempt to give meaning to the phrase "prepared for the originator's personal use." The newspaper took the position that either of the following two hypothetical examples might fall within the personal use exception: (1) a "personal to do" list created by an authority employee that includes reference to authority-related tasks, and (2) notes created by an authority employee

issue here unquestionably were created and used in connection with multiple district functions (e.g., the conduct of district employees and students as part of the athletic program and the work of the district employees in conducting the investigation). However, for the following reasons we reject the newspaper's broad argument.

¶ 19. First, the newspaper's argument ignores the fact that both of the following are express exceptions to the definition of "record": (1) "drafts, notes, preliminary computations and like materials prepared for the originator's personal use"; and (2) "materials which are purely the personal property of the custodian and have no relation to his or her office." *See* WIS. STAT. § 19.32(2). If, as the newspaper argues, the legislature intended the interpretation of the first exception to turn on whether a document related to an authority function, it would make no sense to omit from the first exception the phrase used for this idea in the second exception ("have no relation to his or her office"). For the first exception to have the meaning that the district attributes to it, we would be required to, in effect, insert this phrase into the first exception, which we are not free to do in interpreting the statute. Put differently, the newspaper's interpretation assumes convoluted drafting and fails to read the personal use exception " 'as part of a whole; in relation to the language of surrounding or closely-related statutes;

---

regarding an authority function that reflect only "personal mental reflections" of the originator. However, we see considerable ambiguity in these two hypothetical examples. And, what is more fundamental, we do not see how one could derive from them a coherent rule based on the terms of WIS. STAT. § 19.32(2) that diverges in any meaningful way from the broad position of the newspaper we address in the text. Therefore we do not address these concepts further.

and reasonably, to avoid absurd or unreasonable results.' "[5] *See Bank Mut.*, 326 Wis. 2d 521, ¶ 26 (quoted source omitted).

¶ 20. Second, a longstanding attorney general opinion that is directly on point diametrically contradicts the interpretation advanced by the newspaper, and we conclude that this longstanding opinion interprets the personal use exception correctly. *See* 77 Wis. Op. Att'y Gen. 100 (1988).[6] As referenced above, attorney general opinions in this context are not controlling, but have special significance as potential persuasive authority, particularly after an extended period of apparent legislative acquiescence. *See Beaver Dam Area Dev. Corp.*, 312 Wis. 2d 84, ¶¶ 37, 44; *Schill*, 327 Wis. 2d 572, ¶¶ 21, 49, 92, 94, 99–118, 122–26, 139.

¶ 21. The attorney general opined in pertinent part as follows:

[E]xclusion of material prepared for the originator's personal use is to be construed narrowly. Most typically this exclusion may be invoked properly where a

[5] The newspaper's only argument on this point addresses a surplusage argument made by the district that we do not rely on in reaching our decision. Assuming without deciding that the newspaper is correct in its surplusage analysis, we conclude that it is beside the point because our interpretation, explained in the text, does not depend on a surplusage concept.

[6] The 1988 attorney general opinion interpreted the 1987–88 version of Wis. Stat. § 19.32(2), but, despite other legislative changes to many aspects of the public records law, as we note in the text below, the pertinent language has not changed. "The definition of 'record' in Wis. Stat. § 19.32(2) has not been amended since the legislature adopted it in 1983." *Schill v. Wisconsin Rapids Sch. Dist.*, 2010 WI 86, ¶ 121, 327 Wis. 2d 572, 786 N.W.2d 177. As we state in the text, this fact in itself lends weight to the 1988 attorney general's opinion, in light of apparent legislative acquiescence.

person takes notes for the sole purpose of refreshing his or her recollection at a later time. If the person confers with others for the purpose of verifying the correctness of the notes, but the sole purpose for such verification and retention continues to be to refresh one's recollection at a later time, . . . the notes continue to fall within the exclusion. However, if one's notes are distributed to others for the purpose of communicating information or if notes are retained for the purpose of memorializing agency activity, the notes would go beyond mere personal use and would therefore not be excluded from the definition of a "record."

Wis. Op. Att'y Gen. at 102.

¶ 22. At oral argument, the district effectively adopted this interpretation of Wis. Stat. § 19.32(2), acknowledging that if the originators here had distributed their notes to other district employees to rely on, the notes would no longer fall within the personal use exception.

¶ 23. We pause to note potential ambiguity in two phrases used by the attorney general and to explain our views as to what the attorney general would most reasonably have meant in using these phrases under a correct interpretation of the language of Wis. Stat. § 19.32(2). Both of the phrases that we highlight address purposes and conduct of originators that could take notes out of the personal use exception: the first by creating or retaining notes for the purpose of distributing them to others in order to communicate information, and the second by creating or retaining notes for the purpose of establishing a formal position or action of the authority.

¶ 24. In the first phrase we highlight, the attorney general states that the personal use exception would not apply "if one's notes are distributed to others

444

*for the purpose of communicating information."* At first blush, it might be difficult to understand why anyone would distribute notes to others for a purpose *other than* to communicate information of some kind. However, this would omit at least one possible scenario. This would be the scenario in which notes that are intended only for the personal use of the originator physically change hands, but only so that one or more recipients can store or maintain the notes on behalf of the originator, not so that any recipient would read or make any other use of the notes. In any event, as pertinent to resolution of this appeal, as we explain further below, the newspaper fails to point to evidence raising a reasonable inference that the notes in question were distributed to others for any purpose, to communicate information or otherwise.

¶ 25. In the second phrase we highlight, the attorney general states that the personal use exception would not apply "if notes are retained *for the purpose of memorializing agency activity."* At least when this phrase is read in isolation, it could imply that the personal use exception does not apply when the originator retains notes for the purpose of documenting any activity that he or she took in connection with his or her authority-related work, which would be in line with the broad argument advanced here by the newspaper. However, when the entire passage from the attorney general opinion is considered, we interpret this phrase to be making a distinction that is reasonably based on the statutory phrase, "prepared for the originator's personal use." The distinction is between the situation in which the originator creates and retains notes for the purpose of establishing a formal position or action of the authority, as opposed to the situation, referenced earlier in the attorney general's

opinion, in which the originator creates and retains the notes for "the sole purpose" of "refresh[ing] one's recollection at a later time" regarding an activity the originator has undertaken (or, for that matter, regarding an observation, thought, or plan of the originator). It seems obvious that whenever notes are used to establish a formal position or action of an authority, such uses go beyond any personal uses of the originator.

¶ 26. With these explanations, we conclude that the attorney general opinion as we construe it in light of the language of Wis. Stat. § 19.32(2) is persuasive as a correct interpretation of the personal use exception.[7]

¶ 27. We find support for the 1988 attorney general opinion, and our interpretation, in this court's decision in *Panknin*, 217 Wis. 2d at 210–12. In *Panknin*, we held that "work related" notes created and kept by a circuit court judge did not have to be provided to a person whom the judge had sentenced, because the judge's sentencing notes were "a voluntary

---

[7] Although neither of the parties nor the 1988 attorney general opinion calls our attention to the issue, we observe that there is a strictly literal interpretation of the personal use exception that would expand its reach considerably, which we reject. We refer to the fact that the personal use exception, by its terms, could be read to focus exclusively on the originator's intentions at the point in time at which the originator creates the document at issue ("*prepared for* the originator's personal use"), and makes no reference to subsequent intentions and uses by the originator or anyone else. *See* Wis. Stat. § 19.32(2) (emphasis added). However, we reject this possible strict interpretation on the ground that the only reasonable reading of the statute, when it is read in light of the "presumption of complete public access," is that the legislature intended "personal use" to be treated as a use that can be lost over time, and that is not limited to the originator's intent at the time the document was prepared. *See* Wis. Stat. § 19.31.

446

piece of work completed by the trial court for its own convenience and to facilitate the performance of its duties." *Id.* at 212. It is true, as the newspaper emphasizes, that we reached that conclusion after considering various sources of authority, and it is also true that we focused in part on the obligations that judges have in the manner in which they exercise their discretion as courts, a different context from the instant case. *See id.* at 206–10, 212–16. However, a portion of *Panknin* is unambiguously devoted to the personal use exception under Wis. Stat. § 19.32(2), and considers authority from courts in other jurisdictions in cases that did not involve judges' notes. *Panknin*, 217 Wis. 2d at 210–12; *see also Custodian of Records for LTSB v. State*, 2004 WI 65, ¶ 45, 272 Wis. 2d 208, 680 N.W.2d 792 ("However, not everything a public official creates is *a public record, see State v. Panknin*, 217 Wis. 2d 200, 209–10, 579 N.W.2d 52 (Ct. App. 1998) (concluding that personal notes of a sentencing judge *are not public records*) . . . ." (emphasis added)). The public records discussion in *Panknin* is consistent with the 1988 attorney general opinion, and its reasoning matches our current approach.[8]

¶ 28. In an attempt to bolster its broad argument, the newspaper contends that, under *Fox*, a document is a "record" under Wis. Stat. § 19.32(2), if

---

[8] Separately, we reject as meritless the related suggestion by the newspaper that we interpret *Schill* as holding that the personal use exception cannot apply if the content of a document is related to an authority function. This includes the suggestion that *Schill* should be interpreted as silently overruling or casting doubt on *State v. Panknin*, 217 Wis. 2d 200, 579 N.W.2d 52 (Ct. App. 1998). The newspaper fails to point to these propositions anywhere in any part of *Schill*'s multiple opinions that are supported by a majority of the court, or, for that matter, in any part of any opinion of any justice.

447

any of the following are true: the document "arouses official action," "results in a formal opinion," or "includes the memorials of a public employee or officers." *See Fox*, 149 Wis. 2d at 408. However, this argument rests on a passage in *Fox* that we conclude the newspaper takes out of context.

¶ 29. The facts of *Fox* are entirely distinguishable from this case, and therefore its pertinent holding does not support the newspaper's broad argument. A county official denied a requester access to a report commissioned by the official on the grounds that the report was a "draft" and therefore was excluded as a record under Wis. Stat. § 19.32(2) (1989–90). *Fox*, 149 Wis. 2d at 408–09. Our supreme court concluded that the county official failed to carry his burden to show that the report was a draft, a burden that the official apparently attempted to carry for the most part by "[m]erely labeling each page of the document 'draft.' " *Id.* at 414–17. The court noted that the report was not only shared widely within the sheriff's department, it was a required subject of study by department employees. *See id.* at 414. It was beyond dispute that the report was not created for the personal use of the county official. *See id.*

¶ 30. The newspaper here relies on *Fox* exclusively for the fact that the opinion includes an extended quotation from a significantly earlier opinion of the court that contains language that the newspaper contends is controlling here. *See id.* at 411–12 (quoting *International Union v. Gooding*, 251 Wis. 362, 369, 29 N.W.2d 730 (1947)).[9] However, neither *International Union* nor *Fox* addressed the issue in this appeal, and

---

[9] The following is the passage from *International Union v. Gooding*, 251 Wis. 362, 371–72, 29 N.W.2d 730 (1947), quoted in *Fox*, now highlighted by the newspaper:

448

we conclude that the passage relied on by the newspaper has no bearing on the issue presented here.

¶ 31. *International Union* interpreted WIS. STAT. § 18.01 (1945),[10] which was the predecessor in part to WIS. STAT. § 19.21, which was in turn the predecessor in

> It is the rule independently of statute that public records include not only papers specifically required to be kept by a public officer but all written memorials made by a public officer within his authority where such writings constitute a convenient, appropriate, or customary method of discharging the duties of the office . . . .
>
> In the case at bar the petition was received and given a file number. *It aroused official action of the board resulting in a formal written opinion which was also filed.* This appears to us to indicate that it is a public record or at least that it is a paper in the hands of a public official as such officer. While the petition itself is not a memorial by the officer, it is in a sense a part of a docket which includes the memorial of an officer and for the foregoing reasons must be considered to be included in the description of papers affected by sec. 18.01(1), Stats. We think this might be true even if the commission could originally have consigned the paper to the wastebasket or have returned it to its sender, without taking formal action . . . .

*Fox*, 149 Wis. 2d at 411–12 (emphasis in *Fox*).

[10] WIS. STAT. § 18.01(1) (1945) provided:

> Each and every officer of the state, or of any county, town, city, village, school district, or other municipality or district, is the legal custodian of[,] and shall safely keep and preserve[,] all property and things received from his predecessor or other persons and required by law to be filed, deposited, or kept in his office, or which are in the lawful possession or control of himself or his deputies, or to the possession or control of which he or they may be lawfully entitled, as such officers.

WIS. STAT. § 18.01(2) (1945) provided:

> Except as expressly provided otherwise, any person may with proper care, during office hours and subject to such orders or regulations as the custodian thereof may prescribe, examine or copy any of the property or things mentioned in subsection (1).

449

part to the current public records law. *See International Union*, 251 Wis. 362; *Schill*, 327 Wis. 2d 572, ¶¶ 87–104; *see also* 1981 Wis. Laws, ch. 335, §§ 9–14; *compare* WIS. STAT. § 19.21 (1979–80) *with* WIS. STAT. § 19.32(2) (1981–82). Thus, *International Union* long predated the extensive amendments to the public records laws enacted in 1981–82, most notably including the creation of the personal use exception.

¶ 32.  We conclude that, while *Fox* itself postdated the major statutory revision of the public records law, the supreme court did not intend in *Fox* to adopt the quoted language from *International Union* as a gloss on the personal use exception in WIS. STAT. § 19.32(2). The *International Union* passage was included in *Fox* only to provide general context for the court's explanation that the corporation counsel's "draft" argument held no water. In addition, without an explanation or direction in *Fox*, it is difficult to reconcile the language of the exceptions in the current version of § 19.32(2) with the propositions now advanced by the newspaper, supposedly based on *Fox*, that any document in the possession of an agency is a public record if it "arouses official action," "results in a formal opinion," or "includes the memorials of a public employee or officers." That is, the newspaper fails to explain how any statement in *Fox* supports use of these vague formulations as legal standards in the current context, consistent with the express exceptions contained in § 19.32(2).

¶ 33.  Supporting this conclusion is the fact that the 1988 attorney general's opinion discussed above predated *Fox*. If it had been the intent of the supreme court in *Fox* to adopt the broad argument now advanced by the newspaper, the attorney general's opinion would likely have been the subject of comment by

450

one or more members of the court. *See Schill,* 327 Wis. 2d 572, ¶ 99 (citing a different attorney general's opinion in the course of a historical review). This is all the more likely in light of the obvious, major significance of this issue for the operations of Wisconsin authorities and those requesting records from authorities. If a rule were announced today that all notes related to authority functions are public records, there can be no doubt that countless documents currently treated as personal notes and discarded in the ordinary course of authority business would have to be retained and made available reasonably promptly upon request.

¶ 34. Further, the 1988 attorney general's opinion also predated multiple revisions to Wis. Stat. § 19.32 by the legislature, including the significant set of revisions in 2003. *See* 2003 Wis. Act 47, § 1. Despite revisions to other aspects of the public records law, failure to alter the definition of "record" could be seen as acquiescing to the 1988 attorney general opinion. *See Schill,* 327 Wis. 2d 572, ¶¶ 122–124 (observing that, while "[l]egislative failure to act is ordinarily weak evidence of legislative intention to acquiesce in or countenance a judicial or executive branch interpretation," at least in connection with attorney general opinions on topics not directly at issue in the instant appeal, "[t]he legislature has thus passed up several opportunities to change the definition of 'record' after the attorney general's opinions.").

¶ 35. Having rejected the newspaper's broad argument, we turn to its narrow ones. For purposes of the narrower arguments, the newspaper assumes that the attorney general's interpretation of the personal use exception was correct. The newspaper argues that, even assuming this interpretation, here the origina-

451

tors either effectively distributed or planned to distribute the notes to others, or retained them for the purpose of establishing a formal position or action of the authority.

¶ 36. However, the newspaper acknowledged at oral argument that the evidence presented to the circuit court established that district employees each created their sets of notes individually and then each used his or her notes to refresh his or her memory on subsequent occasions regarding aspects of the investigation that he or she directly participated in, without ever distributing the notes to anyone else. There is also no dispute that the withheld notes were kept by their creators in their individual offices and were not placed in any other official files maintained by the district, and so there is no question of potential distribution through the shared use of files or offices, for the purpose of communicating information or otherwise. Further, the newspaper points to no evidence that the notes were retained for the purpose of establishing any formal position or action taken by the district, as opposed to being retained by the originators to refresh their memories, as they testified. While some individual notations may represent tentative conclusions on issues of consequence in the investigation, none of the notes individually or collectively appear to establish formal positions or actions of the district. The newspaper in its briefing on appeal appears to concede that the testimony established, at best, that the notes were merely the raw material for generating what one witness referred to as the "culminating disciplinary document."

¶ 37. Moreover, as we have already suggested above, we observe that the notes consistently have the appearance of fragmentary notations of the type com-

monly created by people when they anticipate being the only users of the notes. That is, the notes do not appear to have been written in a style or format that would ordinarily be used when the originators' purposes included distribution to others or establishment of formal authority positions or actions. In short, while the gist of individual notations sometimes seems clear, any person other than an originator would not be able to interpret the meaning of these notes with any degree of confidence without a detailed interpretation by the originator. All of these features support the conclusion that these notes were created and maintained for the personal use of the originators.

¶ 38.   We discern three related categories of more specific arguments made or implied by the newspaper in support of its position about distribution to others or the establishment of formal district positions or actions. We identify the three categories in turn, and reject each as a basis to conclude that the notes fall outside the personal use exception. In favor of the newspaper, we assume without deciding that analysis on this question does not end with the newspaper's admission that there is no evidence that the documents physically changed hands.

¶ 39.   First, the newspaper points to testimony indicating that district employees either were prepared to or did consult their personal notes in talking with other employees participating in the investigation. However, the newspaper acknowledges that it failed to discover evidence showing more than the potential inference that some employees consulted their personal notes "to provide information to one another," as for example as an aid in recalling an aspect of an interview during a joint meeting. The examples of alleged non-personal use emphasized by

the newspaper involve the inference that an originator of notes reported to a supervisor what an interviewee had said, and in doing so made oral reference to contents of his or her notes. This falls short of distribution of the documents with others. In those instances, the notes were still used by the originator alone; the notes were not distributed and others were not relying directly on the notes.

¶ 40.  Second, the newspaper points to testimony by district employees that at least some of the notes they took were retained in case the employees needed to consult the notes later. However, the newspaper fails to explain why personal retention for later personal review should transform personal use into nonpersonal use. Like the judge's retention of personal notes made in connection with a sentencing hearing in *Panknin*, it does not change the nature of the personal use here if the originators kept their personal notes. It might matter if there were evidence that the originators retained the notes *for the purpose of* later distribution to others. However, we need not address that issue, because there is no reasonable inference of that here. The mere fact that retained notes *could* be distributed to others in the future does not deprive the notes of their personal-use nature.[11]

---

[11] We also note a potential perverse incentive, not likely to have been intended by the legislature, that could be created if retention were in itself treated as a factor weighing against application of the personal use exception. Such a rule might encourage earlier destruction of documents, both to the potential detriment of government operations and the detriment of requesters who might have otherwise obtained already-discarded documents through voluntary disclosure or as a result of litigation.

¶ 41.    The third argument, which may be multi-faceted, could be seen as an extension of the last. The newspaper suggests that we should conclude that the originators retained the notes for the purpose of later distribution or the purpose of establishing formal district positions or actions, because there was evidence that "in the event of a challenge" to actions the district took as a result of its investigation, "the only way" for the district "to support" its actions "would be to review" the contents of the notes. One variation on this argument appears to be that we should conclude that the notes lacked exclusively personal uses because the evidence shows that the notes were instrumental to the district in creating formal positions or actions taken by the district. In support of these arguments, the newspaper points to inferences from the testimony that district employees were expected to or required to take notes as part of the investigation—that is, they did not decide to take notes on their own initiative—implying a plan by the district that the notes would eventually be distributed and relied upon to help the district resolve future disputes or litigation. However, each of these arguments rests on a highly speculative theory that the employees might have thought that the notes could eventually, in the event of a dispute or litigation, be distributed or used as the basis to establish formal district positions or actions. These arguments are built on the mere possibility, which is always going to be present in cases involving the personal use exception, that any document created for the personal use of the originator and retained might later lose its personal use status. *See supra* n.7. The newspaper's arguments are unavailing here, because there is no reasonable inference that these possibilities were planned or anticipated.

455

¶ 42. Finally, the newspaper briefly argues that, if we conclude that the record on appeal is not currently sufficient to establish that the notes are records under Wis. Stat. § 19.32(2), as we have done, we should remand with directions that the circuit court hold an evidentiary hearing "to determine the witnesses' credibility regarding the asserted personal use of those notes." It is not clear what authority the newspaper purports to rely on in making this request. We also question whether the newspaper forfeited this argument by its apparent failure to make the same request with clarity and prominence to the circuit court at an appropriate point in the proceedings.

¶ 43. In any case, however, we construe this as an argument that the circuit court improperly deprived the newspaper of a reasonable opportunity to discover the pertinent facts and to argue those facts in the correct legal context. The newspaper fails to persuade us, if that is the newspaper's intent, that this occurred. So far as we can tell the record reflects only extensive efforts by the circuit court to respond appropriately to the requests and concerns of the parties throughout the proceedings.

## CONCLUSION

¶ 44. For these reasons, we affirm the circuit court's denial of the newspaper's petition for a writ of mandamus.

*By the Court.*—Order affirmed.