Denise BLOCK, Plaintiff-Appellant,†

v.

Anthony GOMEZ, Dr. Robert Kahn, Chris Howard, Nell Kendrick, Milwaukee Health Services System, d/b/a The 27th Street Clinic, State Farm Fire & Casualty Insurance Co., Western Clinical Health Services of Milwaukee, Coral Health Services, Inc., Western Clinical Health Services B, Inc., and Western Clinical Health Services G, Inc., Defendants-Respondents.

Court of Appeals

*No. 94–1085. Submitted on briefs March 2, 1995.—Decided April 30, 1996.*

(Also reported in 549 N.W.2d 783.)

†Petition to review denied.

796

For the plaintiff-appellant the cause was submitted on the briefs of *Randall L. Nash* of *O'Neil, Cannon & Hollman, S.C.*, of Milwaukee.

For the defendants-respondents the cause was submitted on the briefs of *William J. Katt* and *Vicki L. Arrowood* of *Kasdorf, Lewis & Swietlik, S.C.*, of Milwaukee.

Before Wedemeyer, P.J., Sullivan and Fine, JJ.

SULLIVAN, J.   Denise Block filed suit against her drug abuse counselor, Anthony Gomez, and his employer, the 27th Street Clinic. At issue was a sexual relationship between Block and Gomez that occurred during her treatment with Gomez. She alleged, among other things, that Gomez: (1) violated § 895.70, STATS., entitling her to punitive damages; (2) breached fiduciary duties he owed to Block; (3) assaulted and battered Block; and (4) intentionally inflicted emotional distress on Block. She alleged that Gomez was acting within the scope of his employment, and that the Clinic was therefore liable for Block's actions under *respondeat superior*. In addition, she alleged that the Clinic negligently hired and supervised Gomez. Finally, she alleged that Gomez and the Clinic violated her rights as a mental health patient under § 51.61, STATS.

The jury was never presented with the *respondeat superior* issue because the trial court ruled, as a matter of law, that Gomez was not acting within the scope of his employment with the Clinic when he engaged in the sexual conduct with Block. The jury returned a verdict in favor of Block. She raises the following issues on appeal: (1) whether the trial court erred in determining that Gomez's sexual conduct was outside the scope of

798

his employment as a matter of law; (2) whether the trial court erred in concluding that the issue of punitive damages against the Clinic, based solely on the *respondeat superior* theory, should not be presented to the jury; (3) whether the trial court erred by determining that the jury could consider whether Block's actions were contributorily negligent; and (4) whether the trial court erred in refusing to add to the amount of the verdict Block's actual attorneys' fees and costs under § 51.61, STATS.

We conclude that the trial court ᵢ properly determined, as a matter of law, that Gomez's sexual conduct was outside the scope of his employment with the Clinic, and properly refused to present the punitive damage issue to the jury. We also conclude, however, that the trial court improperly presented the jury with a question on Block's contributory negligence because § 895.70(2), STATS., provides that consent is not an issue in an action for sexual exploitation by a therapist. Because the jury should not have considered whether Block was contributorily negligent, we reverse that portion of the judgment that reduced the jury's damage award by the percentage of Block's contributory negligence. Finally, we need not address the attorney fee issue because Block's argument is insufficiently developed.

## I. BACKGROUND.

The following facts are undisputed. Block sought treatment for a drug abuse problem at the 27th Street Clinic. The Clinic assigned Gomez as her counselor, and a therapeutic counseling relationship began between the two. Approximately two months later, Gomez initiated a sexual relationship with Block that lasted for the next eight months. The therapeutic

relationship continued during this time. Eventually the sexual relationship ended, as did Block's counseling with Gomez. Block later commenced the present action against Gomez and the Clinic.

At trial, Block testified that her sexual relationship with Gomez began shortly after her treatment started. She testified that Gomez kissed her when he took her and her daughter on a fishing trip and that he later initiated the sexual relationship with her at her home. Eventually, Gomez moved into her apartment. Further, she testified that he kissed, hugged, and fondled her during a counseling session at the Clinic.

Gomez testified that he received some training on transference before he came to the Clinic. *See infra* note 1. He also testified that he knew that ethical guidelines forbade any sexual relationship between a drug counselor and a patient. Gomez's supervisor at the Clinic testified that the Clinic's employee manual forbade sexual relationships with Clinic patients.

Block presented an expert witness, Dr. Andrew Kane, who testified that due to the transference phenomenon, it was impossible to separate Gomez's sexual relationship with Block from his therapeutic relationship with her. He further testified that, in his opinion, Gomez's and Block's relationship was outside the boundaries of Gomez's professional duties, and that Gomez violated those duties when he entered into a sexual relationship with Block.

Before the case went to the jury for deliberation, the trial court made several rulings. The court ruled, as a matter of law, that the evidence presented conclusively showed that Gomez's sexual conduct was outside the scope of his employment with the Clinic. Therefore, neither the *respondeat superior* issue, nor

the punitive damage issue went to the jury. The trial court also determined that the jury could consider whether Block was contributorily negligent.

Accordingly, the jury was presented with the following issues on liability: (1) whether Gomez was negligent with respect to his conduct toward Block and whether that negligence was causal; (2) whether Block was negligent with respect to her conduct and whether that negligence was causal; and (3) whether the Clinic negligently supervised Gomez and whether that negligence was causal. The jury found in favor of Block, apportioning causal negligence at fifty-five percent for Gomez, twenty-five percent for the Clinic, and twenty percent for Block. The jury then awarded Block $41,650 in damages. The trial court reduced this award by the percentage of Block's contributory negligence to $33,450 plus taxable costs for a total judgment of $38,373.62.

## II. ANALYSIS.

### A. Scope of Employment.

Block argues that the trial court should have ruled as a matter of law that Gomez's conduct was within the scope of his employment with the Clinic, thereby making the Clinic vicariously liable for damages caused by that conduct. In the alternative, Block argues that, at a minimum, this issue should have been presented to the jury. We disagree with her on both points.

Block's first argument posits that because of the singular nature of a counselor's relationship with a patient and, more particularly, because of the "transference phenomenon," Gomez's sexual conduct

801

with her must be considered to fall within the scope of his employment with the Clinic.[1] She argues that:

> The essence of Mr. Gomez'[s] negligence is his mishandling of his feelings for Ms. Block. Transference occurred because of the therapeutic relationship and the therapeutic relationship occurred because Mr. Gomez was acting as a counselor for the 27th Street Clinic. As a result, Mr. Gomez was acting within the scope of his employment and the Clinic is responsible for his negligence.

Block further argues that the trial court should have ruled as a matter of law that Gomez's conduct fell within the scope of his employment with the Clinic

---

[1] In *L.L. v. Medical Protective Co.*, 122 Wis. 2d 455, 362 N.W.2d 174 (Ct. App. 1984), this court previously discussed the "transference phenomenon," which "is the emotional reaction which the patient in therapy has toward the therapist." *Id.* at 461, 362 N.W.2d at 177. We noted:

> The patient in therapy "unconsciously attributes to the psychiatrist or analyst those feelings which he may have repressed towards his own parents . . . . [I]t is through the creation, experiencing and resolution of these feelings that [the patient] becomes well." "Inappropriate emotions, both hostile and loving, directed toward the physician are recognized by the psychiatrist as constituting . . . the transference. The psychiatrist looks for manifestations of the transference, and is prepared to handle it as it develops."
>
> The development of the transference "may be coincident with an identification with the therapist whereby the patient learns to think, style and model himself after the therapist." This gives the patient "a model to steer by and emulate" — something strong and healthy the patient may hold onto while in a state of search. The patient "develop[s] extreme emotional dependence on the therapist."

*Id.* at 461, 362 N.W.2d at 177 (citations omitted; bracketed material in original).

because it is impossible to separate an abuse of the transference from the treatment itself. She contends that our opinion in *L.L. v. Medical Protective Co.,* 122 Wis. 2d 455, 362 N.W.2d 174 (Ct. App. 1984), controls the resolution of this issue. We reject her contention.

At issue in *L.L.* was whether a therapist engaging in sexual acts with his patient constituted conduct that fell within the coverage of the therapist's malpractice insurance policy. *Id.* at 457, 362 N.W.2d at 175. We held that "because a psychiatrist's performance of sexual acts with a patient can constitute failure to give proper treatment," the patient's malpractice claim came within the specific policy language of the therapist's insurance policy. *Id.* In reaching this conclusion, we stated:

> [A] sexual relationship between therapist and patient cannot be viewed separately from the therapeutic relationship that has developed between them. The transference phenomenon makes it impossible that the patient will have the same emotional response to sexual contact with the therapist that he or she would have to sexual contact with other persons. Further, by introducing sexual activity into the relationship, the therapist runs the risk of causing additional psychological damage to the patient.

*Id.* at 462, 362 N.W.2d at 178. Because the essence of the patient's claim for malpractice was the therapist's departure from proper standards of medical practice, we stated that the claim fell within the insurance policy's language for a " 'claim for damages . . . based on professional services rendered or which should have been rendered, by the insured.' " *Id.* at 463, 362 N.W.2d at 178 (citation omitted).

The question of whether an insured's actions fall within the specific coverage provisions of a malpractice insurance policy is a completely distinct question from whether, as a matter of law, an employer is vicariously liable for the conduct of its employee through *respondeat superior*. Hence, contrary to Block's contention, our holding in *L.L.* does not control the issue before us in this case, and we are thus presented with a novel question.[2]

The trial court ruled, as a matter of law, that Gomez's conduct fell outside the scope of his employment with the Clinic. Normally, the scope-of-employment issue is presented to the jury because it entails factual questions on an employee's intent and purpose. *Desotelle v. Continental Casualty Co.,* 136 Wis. 2d 13, 26-28, 400 N.W.2d 524, 528-29 (Ct. App.

---

[2] We do note that other jurisdictions have taken the above language from *L.L.* and concluded as a matter of law that a therapist's sexual conduct with a patient fell within the scope of the therapist's employment; and thus, held the therapist's employer vicariously liable for damages arising out of that conduct. *See Simmons v. United States,* 805 F.2d 1363, 1369-70 (9th Cir. 1986) ("[W]e believe the centrality of transference to therapy renders it impossible to separate an abuse of transference from the treatment itself. The district court correctly found that the abuse of transference occurred within the scope of [the therapist's] employment."); *see also Doe v. Samaritan Counseling Center,* 791 P.2d 344, 348-49 (Alaska 1990) ("Given the transference phenomenon that is alleged to have occurred in this case, we hold that it could reasonably be concluded that the resulting sexual conduct was 'incidental' to the therapy."). Our conclusion in this case explicitly rejects an extension of our opinion in *L.L.* to issues outside the specific insurance-coverage dispute in *L.L.*

1986). Thus, for a court to remove this question from the jury's consideration and to rule as a matter of law that an employee's conduct fell outside the scope of employment, the evidence presented must support only that conclusion. *See Linden v. City Car Co.*, 239 Wis. 236, 239, 300 N.W. 925, 926 (1941).

Because the trial court's ruling in the case at bar raises an issue of law, our review is *de novo. See Old Republic Sur. Co. v. Erlien*, 190 Wis. 2d 400, 411, 527 N.W.2d 389, 392 (Ct. App. 1994). We must view the evidence most favorably to Block because if there is any credible evidence that sustains her cause of action—that is, sustains her scope-of-employment argument—that issue should have been presented to the jury. *See Kozlowski v. John E. Smith's Sons Co.*, 87 Wis. 2d 882, 898, 275 N.W.2d 915, 922 (1979); *cf. Weiss v. United Fire & Casualty Co.*, 197 Wis. 2d 365, 388, 541 N.W.2d 753, 761 (1995) (stating that question should have been presented to the jury unless reviewing court concludes that " 'as a matter of law, that no jury could disagree on the proper facts or the inferences to be drawn therefrom,' and that there is no credible evidence to support a verdict for the plaintiff" ( Citation omitted.)).

"Under the doctrine of *respondeat superior* an employer can be held vicariously liable for the negligent acts of his employees while they are acting within the scope of their employment." *Shannon v. City of Milwaukee*, 94 Wis. 2d 364, 370, 289 N.W.2d 564, 568 (1980); *see also* RESTATEMENT (SECOND) OF AGENCY § 219(1) (1957) ("A master is subject to liability for the torts of his servants committed while acting in the scope of their employment."). Our supreme court has

stated that the "[c]onduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." *Scott v. Min-Aqua Bats Water Ski Club, Inc.,* 79 Wis. 2d 316, 321, 255 N.W.2d 536, 538 (1977). Further, the employee's intent must be considered when determining whether his or her conduct was within the scope of employment. *Olson v. Connerly,* 156 Wis. 2d 488, 498-99, 457 N.W.2d 479, 483 (1990).

In short, employees act within the scope of their employment as long as they are, at a minimum, "partially actuated by a purpose to serve the employer." *Id.* at 499, 457 N.W.2d at 483. Serving the employer need not be the sole purpose of the employee's conduct, nor need it be even the primary purpose. *Id.* An employee's conduct, however, cannot be said to fall within the scope of employment "if it is too little actuated by a purpose to serve the employer or if it is motivated entirely by the employee's own purpose." *Id.* at 499-500, 457 N.W.2d at 483. Thus, if the employee fully steps aside from conducting the employer's business to procure a predominantly personal benefit, the conduct falls outside the scope of employment. *Id.* at 500 & n.11, 457 N.W.2d at 483-84 & n.11.

We reject Block's contention that the "transference phenomenon" makes Gomez's sexual relationship with Block inseparable from his therapeutic relationship with Block for purposes of the Clinic's vicarious liability. "Therapist-patient sex arises not out of the transference, which is essential to the therapy, but the intentional abuse of the transference." *Doe v. Samaritan Counseling Center,* 791 P.2d 344, 351 (Alaska 1990) (Moore, J., dissenting); *see also Birkner*

*v. Salt Lake County*, 771 P.2d 1053, 1058 (Utah 1989) (stating therapist's sexual conduct with patient "arose from his own personal impulses, and not from an intention to further his employer's goals").

■

Further, a therapist's intent must be considered when determining whether the conduct was within the scope of employment. *Olson*, 156 Wis. 2d at 498-99, 457 N.W.2d at 483. It is undisputed that Gomez knew that he was forbidden by the Clinic to enter into a sexual relationship with his patients because the Clinic had a written policy forbidding such conduct between its therapists and patients. Gomez acknowledged that he entered into the sexual relationship anyway. Thus, Gomez undisputedly stepped aside from the Clinic's business to procure a purely personal benefit; that is, a sexual relationship with Block. Accordingly, the trial court could properly conclude from the evidence presented, even when viewing that evidence most favorably to Block, that Gomez's conduct was not "partially actuated by a purpose to serve the employer." *Id.* at 499, 457 N.W.2d at 483. As such, the trial court could also properly rule that Gomez's actions, as a matter of law, fell outside the scope of his employment with the Clinic. Block has not presented this court with any basis to reverse the trial court on this issue.

*B. Punitive Damages.*

■

The trial court refused to present the jury with a question on punitive damages based on the Clinic's actions because it concluded that Gomez's actions were not within the scope of his employment with the

807

Clinic.[3] Block challenges this ruling by essentially reiterating her arguments on the scope-of-employment issue. Because we conclude that the trial court correctly ruled on the scope-of-employment issue, we also conclude that the trial court did not commit error on the punitive damage issue. There was no need to instruct on punitive damages if the Clinic was not vicariously liable for Gomez's conduct through *respondeat superior*.

## C. Contributory Negligence.

The trial court presented the jury with a question on Block's contributory negligence, ruling that the jury could consider whether Block's actions contributed to her alleged injuries. The trial court erred on this issue.

Under § 895.70(2), STATS., the legislature created a civil cause of action for acts constituting sexual exploitation by a therapist:

> (2) CAUSE OF ACTION. (a) Any person who suffers, directly or indirectly, a physical, mental or emotional injury caused by, resulting from or arising out of sexual contact with a therapist who is rendering or has rendered to that person psychotherapy, counseling or other assessment or treatment of or involving any mental or emotional illness, symptom or condition has a civil cause of action against the psychotherapist for all damages resulting from, arising out of or caused by that sexual contact. *Consent is not an issue in an action under this section, unless the sexual contact that is the subject of the action occurred more than 6*

---

[3] Section 895.70(5), STATS., provides that "[a] court or jury may award punitive damages to a person bringing an action under [§ 895.70]."

*months after the psychotherapy, counseling, assessment or treatment ended.*

(Emphasis added.) The legislature, with a limited exception, expressly provided that a patient's consent to sexual conduct with the therapist cannot be considered in a cause of action based on this statute.[4] *See id.* The limited exception is not relevant to the case

---

[4] Gomez argues that consent is an issue under § 895.70, STATS., and that the trial court could present an issue of Block's contributory negligence to the jury. Gomez is correct that § 895.70, STATS., as originally created by the legislature, was silent on whether a patient's consent was an issue in causes of action premised on the statute. Section 895.70, STATS. (1985-86). The legislature, however, subsequently amended § 895.70, and expressly removed a patient's consent from consideration as an issue in such causes of action. *See* 1991 Wis. Act 217, § 2m.

Further, the legislature in 1991 Wis. Act 217 retroactively applied this revision of § 895.70 to all actions "commenced or pending on the effective date [May 7, 1992]." 1991 Wis. Act 217, § 5. It is undisputed that Gomez's actions occurred in 1986 and 1987, and thus predated the legislature's revision of § 895.70. It is also undisputed, however, that Block's action was pending on May 7, 1992. Thus, because the legislature expressly stated that its revisions to § 895.70 were applicable to all actions pending on May 7, 1992, those revisions are applicable to Block's cause of action against Gomez. *Employers Ins. of Wausau v. Smith,* 154 Wis. 2d 199, 223, 453 N.W.2d 856, 865 (1990) (stating " 'a law will not be construed as retroactive unless the act clearly, by express language or necessary implication, indicates that the legislature intended a retroactive application.' " (Citation omitted.)). Neither party has challenged the legislature's authority to apply retroactively the revised statute; thus, we do not reach this issue. *Waushara County v. Graf,* 166 Wis. 2d 442, 451, 480 N.W.2d 16, 19 (1992) (stating "appellate courts need not and ordinarily will not consider or decide issues which are not specifically raised on appeal"), *cert. denied,* 506 U.S. 894 (1992).

at bar because the sexual relationship between Block and Gomez was concurrent with the counseling relationship. Because the legislature has expressly precluded the patient's consent from being considered as an issue, it was improper for the jury to consider whether Block's actions contributed to her injuries. We must, therefore, reverse that portion of the judgment that reduced the jury's damage award by the percentage of Block's contributory negligence; she is entitled to the entire award of $41,650, plus costs.[5]

Contrary to Block's assertions, we need not reverse for a new trial on the issue of damages because both the jury instructions and the special verdict questions properly instructed the jury to compute its damage award regardless of its answers to the causal and

---

[5] We need not reverse and remand for a new trial on the apportionment of liability because, as both parties point out, under Wisconsin's rule of joint and several liability: " '[A]ny one of two or more joint tort-feasors, or one of two or more wrong doers whose concurring acts of negligence result in injury, are each individually liable for the entire damage which resulted from their joint or concurrent acts of negligence.' " *Group Health Coop. of Eau Claire v. Hartland Cicero Mut. Ins. Co.,* 164 Wis. 2d 632, 635-36, 476 N.W.2d 302, 303 (Ct. App. 1991) (citation omitted). Thus, Gomez and the Clinic are jointly and severally liable for the entire judgment. Gomez, however, has filed court documents that show that any debt attributed to him arising out of this suit was discharged in bankruptcy. Accordingly, any impact that our decision would have on any subsequent contribution actions between the Clinic and Gomez is moot, making a new trial on the apportionment of liability unnecessary. Finally, we note that the judgment in this case was entered April 5, 1994; therefore, the changes to Wisconsin's comparative negligence statute, *see* 1995 Wis. Act 17, effective May 17, 1995, are not applicable to this case.

comparative negligence questions. It is an "invariable assumption of the law that jurors follow their instructions." *Richardson v. Marsh,* 481 U.S. 200, 206, 107 S. Ct. 1702, 1707, 95 L.Ed.2d 176, 185 (1987); *see also Ford Motor Co. v. Lyons,* 137 Wis. 2d 397, 457 n.20, 405 N.W.2d 354, 378 n.20 (Ct. App. 1987). Hence, the jury has conclusively spoken on the amount of damages incurred by Block; she is not entitled to another roll of the dice seeking a greater damage award. *Cf. Nordeen v. Hammerlund,* 132 Wis. 2d 164, 170, 389 N.W.2d 828, 831 (Ct. App. 1986) (affirming damage verdict, but ordering new trial solely on liability issue).

*D. Section 51.61,* STATS. *and Attorney Fees.*

Block argues that she is entitled to actual attorney fees and costs as provided by § 51.61, STATS., because she was a "patient," and that because Gomez's negligent and intentional acts violated her patient's rights, she is entitled to relief as provided by § 51.61(7), STATS. Her argument on this issue is amorphous and insufficiently developed; hence, we will not address it. *Barakat v. DHSS,* 191 Wis. 2d 769, 786, 530 N.W.2d 392, 398 (Ct. App. 1995).

### III. SUMMARY.

In sum, while we conclude that the trial court properly ruled as a matter of law that Gomez's actions fell outside the scope of his employment with the Clinic and properly refused to give the jury the punitive damages issue, the trial court erred by allowing the jury to consider whether Block's actions contributed to her injuries. Accordingly, we affirm the jury verdict on damages; however, we reverse that portion of the

judgment that reduced the jury's damage award by the percentage of Block's contributory negligence. Further, we remand the matter with directions for the trial court to enter a new judgment consistent with this opinion.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.