# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

| | |
|---|---|
| Case No.: | 2022AP1749 |

Complete Title of Case:

#### WISCONSIN VOTER ALLIANCE AND RON HEUER,

##### PETITIONERS-APPELLANTS,

###### V.

##### TERRY REYNOLDS,

##### RESPONDENT-RESPONDENT.

| | |
|---|---|
| Opinion Filed: | November 9, 2023 |
| Submitted on Briefs: | April 13, 2023 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Kloppenburg, P.J., Blanchard, and Nashold, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the petitioners-appellants, the cause was submitted on the briefs of *Erick G. Kaardal* of *Mohrman, Kaardal & Erickson, P.A.*, Minneapolis, Minnesota. |
| Respondent ATTORNEYS: | On behalf of the respondent-respondent, the cause was submitted on the brief of *Andrew A. Jones* and *Andrew J. Kramer* of *Hansen Reynolds LLC*, Milwaukee. |

COURT OF APPEALS
DECISION
DATED AND FILED

November 9, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.  *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2022AP1749**

**STATE OF WISCONSIN**

Cir. Ct. No.  **2022CV128**

**IN COURT OF APPEALS**

---

WISCONSIN VOTER ALLIANCE AND RON HEUER,

    PETITIONERS-APPELLANTS,

  V.

TERRY REYNOLDS,

    RESPONDENT-RESPONDENT.

---

APPEAL from an order of the circuit court for Juneau County: PAUL S. CURRAN, Judge.  *Affirmed*.

Before Kloppenburg, P.J., Blanchard, and Nashold, JJ.

¶1    NASHOLD, J. Wisconsin Voter Alliance and Ron Heuer (collectively, "Alliance") appeal a circuit court order dismissing their petition for a writ of mandamus against Terry Reynolds, the Register in Probate for Juneau County.  Alliance's mandamus action seeks a court order requiring Reynolds to

provide records that, according to Alliance, would show a discrepancy between individuals deemed ineligible to vote or register to vote as a result of guardianship proceedings in Juneau County and individuals appearing on the list of ineligible voters maintained by the Wisconsin Elections Commission ("WEC").[1] Alliance alleges in its petition that Reynolds denied Alliance's records request and that Alliance is entitled to the records pursuant WIS. STAT. § 54.75 and Wisconsin's public records laws. *See* WIS. STAT. ch. 19.

¶2     The circuit court dismissed Alliance's writ petition. Relevant here, the court concluded that the records Alliance seeks are precluded from disclosure pursuant to WIS. STAT. § 54.75, which provides that "court records pertinent to the finding of incompetency" are "closed." On appeal, Alliance concedes that it is not entitled to most of the records requested in its petition and now argues that it is entitled to only one type of record, namely, documents called Notice of Voter Eligibility forms. Alliance also argues judicial bias. We reject Alliance's arguments and affirm the circuit court order.

## BACKGROUND

¶3     Wisconsin Voter Alliance is a Wisconsin corporation. Ron Heuer is its President.

---

[1] We recognize that some of the information that Alliance originally requested may not constitute a "record" as that term is defined under Wisconsin's public records laws. *See* WIS. STAT. § 19.32(2) (2021-22) (defining "record"). However, as we later discuss in more detail, on appeal, the only documents to which Alliance argues it is entitled are Notice of Voter Eligibility forms, which the parties do not dispute are records. Accordingly, for ease of reading and for purposes of this appeal, we refer to all of the information requested as "records."

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶4      On June 15, 2022, Alliance sent a communication to Reynolds requesting answers to three specific questions regarding the number of people adjudicated incompetent in Juneau County during specific time periods. Reynolds responded by email the same day, and Alliance does not dispute that this was fully responsive to its three questions.

¶5      On June 28, 2022, Alliance sent an email to Reynolds, with an attached letter requesting "Names, Addresses, Date of Birth and a copy of all wards under guardianship in your county." The letter stated that Alliance made this request due to its "concerns" that wards under guardianship in Juneau County were improperly registered to vote and had improperly voted in recent elections. The letter cited WIS. STAT. § 54.75, which provides:

> All court records pertinent to the finding of incompetency are closed but subject to access as provided in s. 51.30 or 55.22 or under an order of a court under this chapter. The fact that an individual has been found incompetent and the name of and contact information for the guardian is accessible to any person who demonstrates to the custodian of the records a need for that information.

Alliance relied on the second sentence of this statute, stating that it had a "need" for the requested records and that it had no other way to obtain them.

¶6      On July 26, 2022, prior to receiving Reynolds' response to the June 28 request, Alliance sent another email to Reynolds, "clarify[ing]" its prior request. Specifically, Alliance requested on July 26 the following, in a "readable, electronic format," regarding all guardianship orders in effect in Juneau County from "January 1, 2016[, to] the present," for "wards with no voting rights": "(1) name; (2) address; (3) date of birth; (4) caption of the order; (5) [circuit] court file number; (6) date of guardianship order restricting voting rights; (7) date of guardianship order restoring voting rights, if any; and (8) date of death, if any." Alliance also

sought copies of all guardianship "orders restricting wards' voting rights" for that same time period.

¶7    In addition, Alliance requested the records that are the subject of this appeal:  Notice of Voting Eligibility ("NVE") forms "sent to the Wisconsin Elections Commission anytime."  As noted, Alliance concedes on appeal that it is not entitled to most of the records it sought in the requests summarized above, and now argues that it is entitled to only the NVE forms generated as a result of guardianship proceedings.  These NVE forms are used in the circuit courts in conjunction with guardianship proceedings under WIS. STAT. ch. 54.[2]  As specifically established by statute, during guardianship proceedings "in which an individual is found incompetent and a guardian is appointed," the court may "declare that the individual has incapacity to exercise" certain rights, including the "right to register to vote or vote in an election, if the court finds that the individual is incapable of understanding the objective of the elective process."  WIS. STAT. § 54.25(2)(c)1.g.

¶8    When a circuit court makes a determination that the individual is incapacitated in this respect as part of a guardianship proceeding, that determination "shall be communicated in writing by the clerk of court to the election official or agency charged … with the responsibility for determining challenges to registration and voting."  WIS. STAT. § 54.25(2)(c)1.g.  The parties here agree that, during the relevant time period, the NVE forms were the proper means for transmitting such

---

[2] The NVE forms are also known as GN-3180 (CCAP) forms.  "GN-3180" is found in the lower left-hand corner of the NVE form.  CCAP is the acronym for Circuit Court Access Program, an agency of the Wisconsin court system, which has traditionally been involved in the distribution of court forms.

communications.  It is also undisputed that WEC has relied on the NVE forms as part of its processes to update the statewide voter registration database.

¶9      The parties also do not dispute that, in addition to a copy of the NVE form being sent to WEC, the NVE form is also made a part of the guardianship court file.  The record contains what one of the parties in this case has labeled an "Example Form," which appears to be an actual NVE form from a guardianship proceeding in Taylor County, with information about the ward redacted.  The NVE form has a place for a signature of the county's register in probate, contains the guardianship case number, and (although redacted in the example) the subject individual's name, date of birth, and address.  The form also has two alternative check boxes, one stating that the individual "is not competent to exercise the right to register to vote or to vote in an election," and the other stating that the individual "has been restored the right to register to vote and to vote in an election."  Above the check boxes is the following:  "The circuit court declared on [date] that:" followed by a blank space.  Because the information following the colon has evidently been redacted in the example form, it is unclear what additional information is included in that section other than, at the least, the name of the subject individual being "declared" to be "not competent to exercise the right to register to vote or to vote" or "restored [that] right."  The bottom right-hand corner of the NVE form references WIS. STAT. § 54.25(2)(c)1.g., discussed above, and WIS. STAT. § 54.64(2), which addresses the circuit court's review and modification of an incompetency finding and the court's termination or limitation of a guardianship.

¶10     On the same day that Alliance sent Reynolds its July 26 records request, Alliance filed with the circuit court a petition for a writ of mandamus against Reynolds pursuant to WIS. STAT. § 19.37(1)(a), along with a proposed order. The petition alleges that Reynolds failed to provide Alliance with the records that it

had requested, even though Alliance "demonstrate[d]" a "need" for the records under WIS. STAT. § 54.75. The court "declined" Alliance's proposed order on August 18, 2022.

¶11 Reynolds denied Alliance's July 26 records request on August 9, 2022. Pertinent to this appeal, Reynolds stated that the requested NVE forms are exempt from disclosure by WIS. STAT. § 54.75, and therefore are not required to be provided under WIS. STAT. § 19.36(1). *See* § 19.36(1) ("Any record which is specifically exempted from disclosure by state or federal law or authorized to be exempted from disclosure by state law is exempt from disclosure" under public records law). Reynolds also stated that, even if the requested information and records were otherwise subject to disclosure, the privacy interests relating to guardianship proceedings outweigh any public interest in disclosure of the records under the public records law.

¶12 On August 22, 2022, Reynolds moved to dismiss Alliance's writ petition.[3] Reynolds argued that Alliance's petition fails to state a claim upon which relief may be granted because disclosure of the records is barred under WIS. STAT. § 54.75 and the exception in the same provision for identified information is not met.

¶13 On August 24, 2022, the circuit court issued an order dismissing the petition on the merits, with prejudice. The court concluded that there is no "identified, clear[,] positive[,] and plain non-discretionary duty that [Reynolds] has

---

[3] Reynolds also argued that the action was improperly commenced because Alliance failed to comply with the requirements of WIS. STAT. § 801.02(5) for commencing a mandamus action. The circuit court did not address this issue in its dismissal order and Reynolds states in her appellate brief that she does not seek affirmance of the court's order on this basis. We accordingly do not address this issue.

failed to perform" because, pursuant to WIS. STAT. § 54.75, the records are "closed" and the exception for the release of identified information is not met.

¶14 Alliance appeals the order dismissing its petition for a writ of mandamus.

## DISCUSSION

¶15 Alliance raises two primary arguments on appeal. First, it argues that the circuit court erroneously exercised its discretion when it dismissed Alliance's petition for a writ of mandamus.[4] Alliance separately argues that the court was biased against Alliance and that this bias requires reversal. For the reasons that follow, we reject both arguments.

---

[4] Alliance repeatedly refers to the circuit court's dismissal of the writ petition as a "sua sponte" dismissal, even though the court ordered dismissal of the petition two days after Reynolds filed a motion to dismiss the petition. In her response brief, Reynolds refers to the court's dismissal as being "sua sponte" and "not in response to Reynolds' motion," but provides no citation to the record for this assertion. The phrase sua sponte refers to court action that is not made in response to a request by the parties. *See Sua Sponte*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "sua sponte" as "[w]ithout prompting or suggestion; on its own motion"). Given that Reynolds filed a motion to dismiss and the court issued its order after that motion was filed, we are puzzled by the parties' use of this phrase.

In its brief-in-chief, Alliance cites authority for the proposition that, although courts have authority to dismiss cases "sua sponte," such authority is subject to due process requirements. Alliance also cites authority concluding that due process generally requires notice and an opportunity to be heard, and Alliance states that the circuit court in the instant case did not give it such notice and opportunity. However, all of Alliance's discussion on this point comes under a subheading in its briefing related to WIS. STAT. § 54.75 and a general heading that does not refer to due process concepts. We agree with Reynolds that Alliance does not sufficiently develop an argument that it was denied due process and that therefore we should not address Alliance's "amorphous and insufficiently developed" due process references. *See **Block v. Gomez**,* 201 Wis. 2d 795, 811, 549 N.W.2d 783 (Ct. App. 1996).

### *I. Alliance's Mandamus Action*

A. <u>Mandamus Principles and Standard of Review</u>

¶16    "Mandamus is an extraordinary writ that may be used to compel a public officer to perform a duty that [the officer] is legally bound to perform." ***State ex rel. Greer v. Stahowiak***, 2005 WI App 219, ¶6**,** 287 Wis. 2d 795, 706 N.W.2d 161.  "Mandamus is the proper means to challenge a governmental [entity's] failure to comply with the requirements of Wisconsin's open records law." ***Id.***, ¶7.

¶17    "[T]o obtain a writ of mandamus compelling disclosure of records, the petitioner must establish that four prerequisites are satisfied:  (1) the petitioner has a clear legal right to the records sought; (2) the government entity has a plain legal duty to disclose the records; (3) substantial damages would result if the petition for mandamus was denied; and (4) the petitioner has no other adequate remedy at law."  ***Watton v. Hegerty***, 2008 WI 74, ¶8, 311 Wis. 2d 52, 751 N.W.2d 369 (footnote omitted).

¶18    This court will uphold a circuit court's grant or denial of a writ of mandamus unless the circuit court erroneously exercised its discretion. ***State ex rel. Zignego v. WEC***, 2021 WI 32, ¶38, 396 Wis. 2d 391, 957 N.W.2d 208.  A circuit court's discretion in issuing a writ of mandamus is erroneously exercised if it is based on an erroneous understanding of the law.  ***Id.***   We interpret statutes independently, including their application to undisputed facts in a petition for mandamus. ***Watton***, 311 Wis. 2d 52, ¶6.

¶19    The circuit court in this case dismissed Alliance's writ petition for failure to state a claim upon which relief may be granted.  We also independently review a circuit court's dismissal order.  *See* ***Greer***, 287 Wis. 2d 795, ¶¶5-7.

B.  WISCONSIN STAT. § 54.75

¶20    Alliance argues that the circuit court erroneously concluded that disclosure of the NVE forms is prohibited under WIS. STAT. § 54.75.  For the reasons set forth below, we conclude that the NVE forms are not subject to release under § 54.75.  As a result, Alliance does not have a "clear legal right" to obtain them, nor does Reynolds have a "plain legal duty" to provide them, and therefore Alliance's writ petition fails to state a claim for which relief may be granted.[5]  *See Watton*, 311 Wis. 2d 52, ¶8.

¶21    "If an authority withholds a record or a part of a record or delays granting access to a record or part of a record after a written request for disclosure is made, the requester may … bring an action for mandamus asking a court to order release of the record."  WIS. STAT. § 19.37(1)(a); *see also Watton*, 311 Wis. 2d 52, ¶7 ("A petition for a writ of mandamus is a proper means by which to challenge a refusal to disclose documents sought under the open records law.").[6]

---

[5] Because we conclude that Alliance has not met the first two prerequisites to mandamus, we do not consider the other two:  whether substantial damages would result if the writ petition were denied and whether Alliance has no other adequate remedy at law.  *See Watton v. Hegerty*, 2008 WI 74, ¶27 n.17, 311 Wis. 2d 52, 751 N.W.2d 369.

[6] We observe that there may be a separate reason to affirm the circuit court's dismissal based on the premise that when Alliance brought its mandamus action, it appears that Reynolds had not yet denied Alliance's request for the NVE forms, nor had she delayed providing them.  We question whether the June 28 request for "Names, Addresses, Date of Birth and a copy of all wards under guardianship in your county" could reasonably be construed as requesting the NVE forms that Alliance did not clearly request until the July 26 request.  Thus, it appears that the first time that Alliance requested the NVE forms to which Alliance has limited its argument in this appeal was on the same day that Alliance filed its mandamus action.  The record does not indicate that Reynolds denied or delayed responding to the July 26 request prior to Alliance filing its mandamus action that same day:  Reynolds' denial did not occur until August 9, 2022.  For these reasons, dismissal of the mandamus action may have been warranted on the alternative ground that, at the time the action was filed, there had been no denial or delay as contemplated by WIS. STAT. § 19.37(1)(a).  However, because neither party addresses this issue, we discuss it no further.

¶22    As stated, a party bringing a mandamus action for failure to provide public records must show, among other things, that the requester has a "clear legal right" to obtain the records and that the governmental entity has a "plain legal duty" to disclose them.  *Watton*, 311 Wis. 2d 52, ¶8.  Such rights and obligations may be established by our public records law.  WISCONSIN STAT. § 19.35(1)(a) provides that "[e]xcept as otherwise provided by law, any requester has a right to inspect any record."  Given the important policies of open government underlying the public records law, Wisconsin "'recognizes a presumption of accessibility to public records.'"  *Watton*, 311 Wis. 2d 52, ¶9 (quoted source omitted).  However, "the presumption of access does not create an absolute right of access."  *Id.*, ¶10.  "Access to records may be denied where there is a specific statutory exemption to disclosure, WIS. STAT. § 19.36, or where there is a common law or public policy exception."  *Id.*

¶23    Here, the circuit court determined that Reynolds does not have a plain legal duty to disclose the requested NVE forms because disclosure is prohibited under WIS. STAT. § 54.75, which, as previously noted, provides in its entirety:

> All court records pertinent to the finding of incompetency are closed but subject to access as provided in s. 51.30 or 55.22[7] or under an order of a court under this chapter.  The fact that an individual has been found incompetent and the name of and contact information for the guardian is accessible to any person who demonstrates to the custodian of the records a need for that information.

The parties dispute whether the NVE forms are court records "pertinent to the finding of incompetency," which would render them "closed."  The parties agree

---

[7] Alliance does not argue that the NVE forms are subject to access under either WIS. STAT. § 51.30, which involves treatment and other records under the Alcohol, Drug Abuse, Developmental Disabilities and Mental Health Act, or WIS. STAT. § 55.22, which involves records pertaining to protective services or protective placement proceedings.

that there is no Wisconsin case law interpreting this statutory language and that this case presents an issue of first impression.

¶24    "Statutory interpretation begins with the language of the statute." *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (internal quotation marks and quoted source omitted).  Statutory language "is given its common, ordinary, and accepted meaning." *Id.*; *see also* WIS. STAT. § 990.01(1).  "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Kalal*, 271 Wis. 2d 633, ¶46.

¶25    Alliance argues that the requested NVE forms are not "pertinent to the finding of incompetency" under WIS. STAT. § 54.75 because they are "created after" the proceedings, and therefore "could not have played a role in the court's finding" of incompetency.  (Emphasis omitted.)  We disagree.

¶26    Alliance's interpretation appears to read words into the statute, namely, that the NVE forms must have "played a role" or been part of the underlying basis for the circuit court's finding of incompetency.  However, the statute does not include such language.  Instead, it uses much broader language, stating that the court records are closed if they are "pertinent to the finding of incompetency." *See Fond du Lac Cnty. v. Town of Rosendale*, 149 Wis. 2d 326, 334, 440 N.W.2d 818 (Ct. App. 1989) ("[C]ourts should not add words to a statute to give it a certain meaning."); *Dawson v. Town of Jackson*, 2011 WI 77, ¶42, 336 Wis. 2d 318, 801 N.W.2d 316 ("We decline to read into the statute words the legislature did not see fit to write.").  Moreover, the fact that the NVE form is completed *after* a circuit court's finding of incompetency is immaterial to the issue of whether the form is a

11

"court record[] pertinent to the finding of incompetency" as provided in WIS. STAT. § 54.75. Many court records that are pertinent to a court's decision—such as court forms, written opinions, and transcripts of proceedings in which decisions are made—are created after the court has made a decision. This cannot reasonably mean that such documents are not "court records pertinent to the finding of incompetency."

¶27    Alliance also offers two dictionary definitions of "pertinent": first, "[h]aving some connection with the matter at hand; relevant; to the point," https://www.collinsdictionary.com/us/dictionary/english/pertinent (last visited Nov. 6, 2023); and second, "[p]ertaining to the issue at hand; relevant," BLACK'S LAW DICTIONARY 1181 (8th ed. 2004). *See Spiegelberg v. State*, 2006 WI 75, ¶19, 291 Wis. 2d 601, 717 N.W.2d 641 (in determining ordinary meaning of words that are undefined by statute, "[w]e may consult a dictionary to aid in statutory construction"). Although we do not perceive any consequential difference in these definitions, we note that a more recent edition of Alliance's second source defines "pertinent" as "[o]f, relating to, or involving the particular issue at hand; relevant." *Pertinent*, BLACK'S LAW DICTIONARY (11th ed. 2019).

¶28    Under any of these definitions, the requested NVE forms are clearly "pertinent to the finding of incompetency." The requested forms "hav[e] some connection with" and "relat[e] to," the finding of incompetency because they are created in the context of proceedings in which incompetency is determined for purposes of establishing guardianship. *See* WIS. STAT. § 54.25(2)(c)1.g. ("The court may, as part of a proceeding under s. 54.44 in which an individual is found incompetent and a guardian is appointed, declare that the individual has incapacity to exercise … [t]he right to register to vote or to vote in an election.").

¶29 Recall that each NVE form is a document signed by the register in probate and becomes a part of the circuit court's file. It contains information drawn directly from the guardianship proceedings, including the case caption; the guardianship case number (which includes the designation "GN"); the individual's name, address, and date of birth; the court's determination of whether the individual "is not competent to exercise the right to register to vote or to vote in an election" or "has been restored the right to register to vote and to vote in an election"; and the date on which the court's determination was made. The NVE form also references WIS. STAT. § 54.25(2)(c)1.g., and WIS. STAT. § 54.64(2), both of which address issues related to an incompetency finding and guardianship proceedings, and both of which are found in Chapter 54 of the Wisconsin Statutes governing "Guardianships and Conservatorships." Additional information regarding the subject individual or proceedings may also appear after the language, "The circuit court declared on [date] that:" in the blank space that follows. Thus, these forms, generated as a result of the court's finding of incompetency during a guardianship proceeding, clearly "[h]ave[] some connection with the matter at hand"—*i.e.*, the finding of incompetency—and "relat[e] to" such a finding.

¶30 Moreover, the pertinence of the NVE form to the incompetency determination is reflected in its mandatory nature, once a circuit court determines that a person deemed incompetent lacks the capacity to exercise voting rights. As previously noted, during the relevant time period, the NVE form was the standard means of making a statutorily required report of the circuit court's determination regarding restrictions to an individual's voting rights as a result of the court's finding of incompetency in a guardianship proceeding. WISCONSIN STAT. § 54.25(2)(c)1. provides that "[t]he determination of the court *shall* be communicated in writing by the clerk of court to the election official or agency

13

charged … with the responsibility for determining challenges to registration and voting that may be directed against that elector." Reporting the court's determination about a ward's capacity to vote or register to vote in the manner prescribed by the guardianship statutes can only be reasonably described as being "connected with," "related to," or "relevant [to]" the court's finding of incompetency in the guardianship proceeding.[8]

¶31    Alliance suggests that the NVE form might be used to report a circuit court determination of voting ineligibility arising outside the context of a guardianship proceeding. This assertion is undeveloped and we reject it on that basis. *See* **State v. Pettit**, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992). Moreover, we agree with Reynolds that this undeveloped assertion is "beside the

---

[8] In support of its argument that the requested NVE forms are not "pertinent to the finding of incompetency," Alliance relies on a Wisconsin attorney general opinion from 1978. "[O]pinions of the attorney general are not binding as precedent, but they may be persuasive as to the meaning of statutes." **Voice of Wis. Rapids, LLC v. Wisconsin Rapids Pub. Sch. Dist.**, 2015 WI App 53, ¶11, 364 Wis. 2d 429, 867 N.W.2d 825 (internal quotation marks and quoted source omitted). The opinion concludes that a circuit court's index and docket statement in a guardianship proceeding are not "court records pertinent to the finding of incompetency" in the precursor statute to WIS. STAT. § 54.75, WIS. STAT. § 880.33(6) (1977). 67 Wis. Op. Att'y Gen. 131 (1978).

We do not consider this opinion to be persuasive for several reasons. First, the opinion does not address the NVE forms at issue here but instead addresses a circuit court's index and docket statement. Second, the opinion contains language that undermines Alliance's position. The opinion states, "In my opinion, only the file containing the documents themselves are 'records pertinent to the finding of incompetency,'" and that WIS. STAT. § 880.33(6) (1977) "closes access by the public only to records containing actual documents filed with respect to [WIS. STAT.] ch. 880 proceedings." *Id.* Here, the NVE forms are part of the court file; thus, this language undercuts Alliance's position. The opinion also states, in language that could support Alliance's position, that "only the documents [in the court file] provide information which the court uses to find that an individual is [incompetent]." *Id.* However, as just noted, the NVE forms are in the court file; they are completed after the court makes its incompetency finding. We are not persuaded by the possible implication in this language that NVE forms are not, therefore, "court records pertinent to the finding of incompetency." As with Alliance's interpretation, such an interpretation essentially reads words into the statute that the legislature did not include. That is, instead of the statutory language "pertinent to the finding of incompetency," WIS. STAT. § 54.75, this interpretation transforms the language into something along the lines of "pertinent to the facts supporting the finding of incompetency."

point" because, as Alliance concedes in its reply brief, the NVE forms it requested in this case pertain only to guardianship cases.

¶32 In a separate undeveloped argument, Alliance also appears to suggest that WEC's receipt of the NVE forms and subsequent action of making an official entry into the public voter database that an individual is "incompetent" to vote might take the form outside the "closed" status established by WIS. STAT. § 54.75. However, the confidentiality of an NVE form contained in a circuit court file is not affected by WEC's treatment of a duplicate of that same form. Here, Alliance requested from the Register in Probate the NVE forms that are part of the court records, and § 54.75 prevents their disclosure. Alliance cites no authority for the proposition that the way in which WEC updates or maintains its database can somehow override the requirements of § 54.75. Thus, to the extent that Alliance means to make this argument, we reject it.

¶33 Finally, the parties discuss the relevance and applicability of the following language in WIS. STAT. § 54.75, which, as noted above, directly follows the sentence stating that court records pertinent to the finding of incompetency are closed: "The fact that an individual has been found incompetent and the name of and contact information for the guardian is accessible to any person who demonstrates to the custodian of the records a need for that information." This second sentence of the statute is inapplicable here, however, because Alliance's position is that it is entitled only to the NVE forms, not to the information referenced in this sentence. Thus, we need not discuss whether Alliance has demonstrated a

"need" for information that is not the subject of Alliance's request or mandamus action.[9]

¶34     In sum, we conclude that, because the NVE forms are "pertinent to the finding of incompetency" and therefore barred from disclosure under WIS. STAT. § 54.75, Alliance does not have a clear legal right to obtain them and Reynolds does not have a plain legal duty to disclose them.  Accordingly, Alliance's petition for a writ of mandamus fails to state a claim upon which relief may be granted.[10]

---

[9]  Alliance does not argue in its brief-in-chief that Reynolds is required to provide redacted versions of the NVE forms.  Instead, its argument is that the forms in their entirety must be produced.  To the extent that Alliance means to suggest as an alternative argument in its reply brief that Reynolds is required to produce some unspecified redacted version of the NVE forms, we reject that argument both because it is raised for the first time in reply and because it is inadequately developed.  *See State v. Marquardt*, 2001 WI App 219, ¶39, 247 Wis. 2d 765, 635 N.W.2d 188 (we will not consider issues that are raised for the first time in a reply brief); *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (we need not address undeveloped arguments).  Moreover, any such argument for redaction would likely be unsuccessful, given the language in WIS. STAT. § 54.75 that the "court records" themselves are "closed," indicating that the entire document is exempt from the public records law.  In addition, we note that information regarding an individual's eligibility to vote or register to vote is not accessible under the exception found in the second sentence of § 54.75.

[10]  Reynolds argues that the NVE forms are properly withheld under the public records balancing test in which the public's interest in disclosure of the records is balanced against the public interest in nondisclosure.  *See e.g.*, *Milwaukee J. Sentinel v. DOA*, 2009 WI 79, ¶55, 319 Wis. 2d 439, 768 N.W.2d 700.  Because we conclude that the NVE forms are barred from disclosure under WIS. STAT. § 54.75, we need not address this argument.  *See Barrows v. American Fam. Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

Separately, Alliance asserts that, if its petition for a writ of mandamus was improper, the circuit court erroneously exercised its discretion in failing to convert the petition to a declaratory judgment action instead of dismissing it.  As support, Alliance merely cites WIS. STAT. § 806.04, the Uniform Declaratory Judgments Act.  But that statute says nothing about a court's obligation to convert a party's mandamus action into a declaratory judgment action.  Alliance provides no legal authority or developed argument for the proposition that the court here had an obligation in this regard.  Accordingly, we reject this argument as undeveloped.  *See Pettit*, 171 Wis. 2d at 646.

## II. Judicial Bias

¶35 "'The right to an impartial judge is fundamental to our notion of due process.'" *Miller v. Carroll*, 2020 WI 56, ¶15, 392 Wis. 2d 49, 944 N.W. 2d 542 (quoted source omitted). "We presume that a judge has acted fairly, impartially, and without bias." *Id.*, ¶21. "To overcome that presumption, the burden is on the party asserting judicial bias to show bias by a preponderance of the evidence." *Id.*

¶36 Wisconsin courts employ both subjective and objective approaches for determining whether a party's due process right to an impartial and unbiased judge has been violated. *State v. Herrmann*, 2015 WI 84, ¶26, 364 Wis. 2d 336, 867 N.W.2d 772. Alliance does not contend on appeal that the circuit court judge was subjectively biased; therefore, only objective bias is at issue.

¶37 In determining whether a judge is objectively biased, "[w]e ask whether there is 'a serious risk of actual bias—based on objective and reasonable perceptions.'" *Miller*, 392 Wis. 2d 49, ¶24 (quoted source omitted). "'Due process requires an objective inquiry' into whether the circumstances 'would offer a possible temptation to the average … judge to ... lead [the judge] not to hold the balance nice, clear and true.'" *Id.* (alterations in original; quoted source omitted). The serious risk of actual bias is a structural error that is not subject to a harmless error analysis. *Id.*, ¶35.

¶38 However, "it is the exceptional case with extreme facts which rises to the level of a serious risk of actual bias." *Id.*, ¶24 (internal quotation marks and quoted source omitted). Whether a judge's partiality can reasonably be questioned is a question of law that we review de novo. *Id.*, ¶15.

17

¶39    In support of its judicial bias argument, Alliance relies on four selected quotes from the circuit court's dismissal order, the first two of which characterize Alliance's goals as "political," and the second two of which refer to Alliance's writ petition as a "fishing expedition."  As to the "political" goals, Alliance relies on the following excerpts:

- "[Alliance's] political goals may be laudable or not"; and

- "[Alliance] wish[es] to pursue some political or legal remedy against the Wisconsin Elections Commission."

¶40    With respect to the first excerpt, Alliance neglects to provide the full quote, which is:  "[Alliance's] political goals may be laudable or not.  *The court takes no position on this.  It is not germane to the issue*."  (Emphasis added.)  Thus, rather than demonstrating bias, the court's full statement actually reflects a *lack* of bias.

¶41    As to the second excerpt, the circuit court's full statement was: "[Alliance] wish[es] to pursue some political or legal remedy against the Wisconsin Election Commission and believe[s] this action may support [its] claims."  This statement was made in the context of the court's discussion of whether a "need" for the records exists under WIS. STAT. § 54.75.  Alliance appears to assume that the court's use of the word "political" reflected a view that Alliance was engaging in some sort of nefarious pursuit or aligning itself with a political party or position. The court's statements do not compel this conclusion, nor does a common definition of "political."  "Political" is defined in part as "of or relating to government, a government, or the conduct of government."  *See Political*, https://www.merriam-webster.com/dictionary/political (last visited Nov. 6, 2023).  Alliance's writ petition explicitly states that Alliance "wants to use the requested guardianship court order

18

information to improve the government's accuracy in the WisVote database so that the court orders restricting the voting right of the wards are honored." This stated goal is "of or relating to … the conduct of government." Thus, under this definition, the court's statements accurately characterize Alliance's intended use of the guardianship information.

¶42 However, even if the circuit court's statements incorporated an alternative meaning of "political" such as, "of, relating to, involving, or involved in politics and especially party politics," *id.*, the court's statements would not meet the high threshold for establishing a "serious risk of actual bias," which occurs only in "exceptional" cases involving "extreme facts." *See Miller*, 392 Wis. 2d 49, ¶24. Here, as stated, the court made clear that regardless of whether Alliance was seeking a "political or legal remedy," Alliance's motivation was not germane to the court's analysis.

¶43 Alliance fares no better with respect to the circuit court's "fishing expedition" statements. Alliance relies on the following excerpts from the court's decision:

- "[Alliance is] casting a very broad net on [its] fishing expedition"; and

- "[Alliance] ha[s] not identified a positive and plain duty assigned to [Reynolds] to conduct its fishing expedition for [Alliance]."

In reviewing these statements, it is important to bear in mind that at the time the court made them, Alliance's records request was far broader than the narrowed request on appeal. The court's order addressed Alliance's original request, which, as set forth in the background section above, included not only the NVE forms in guardianship proceedings from "anytime," but also guardianship orders and other

guardianship information dating back to 2016. Alliance now concedes that it is not entitled to most of the information originally sought, including the court's guardianship orders adjudicating competency, and it now narrows the scope of its request to only the NVE forms.

¶44    We also observe that the phrase "fishing expedition" is a commonly used legal phrase, defined in Black's Law Dictionary, as "[a]n attempt, through broad discovery requests or random questions, to elicit information from another party in the hope that something relevant might be found." *Fishing expedition*, BLACK'S LAW DICTIONARY (11th ed. 2019).  Given the scope of the original request, most of which Alliance now concedes was improperly broad, we agree with Reynolds that the circuit court's "fishing expedition" reference was not necessarily unwarranted.

¶45    More importantly, the circuit court's statements quoted above do not come close to rebutting the presumption that the court acted "fairly, impartially, and without bias" or to establishing judicial bias.  *See **Miller***, 392 Wis. 2d 49, ¶21.  The court made these remarks in the context of determining that Alliance had not established a "need" for the information under WIS. STAT. § 54.75, given the court's conclusion that Alliance's allegations were "largely unsubstantiated and unsupported."  The court noted that Alliance "seek[s] records concerning wards whose records have been sent to [WEC] <u>anytime</u>" and "guardianship court orders from January 1, 2016, to the present," and concluded that it "s[aw] no reason why these unfortunate people's records should be deemed a 'need.'"  Significantly, Alliance fails to cite any case that could support a determination of judicial bias under facts similar to those present here.

## CONCLUSION

¶46    For the reasons stated, we affirm the circuit court's order dismissing Alliance's petition for a writ of mandamus.

*By the Court.*—Order affirmed.